THE CALUMET AND CHICAGO CANAL AND DOCK COM-
PANY *et al.* Defendants in Error, *vs.* ALLEN CONKLING
*et al.*—(ABEL DAVIS, Plaintiff in Error.)

*Opinion filed February 16, 1916—Rehearing denied April 13, 1916.*

1. CORPORATIONS—*corporations can exercise only such powers
as are expressly given or necessarily implied.* Corporations can
exercise only such powers as are conferred in express terms or by
necessary implication.

2. SAME—*implied power must be directly appropriate to exe-
cution of express power.* An implied power of a corporation ex-
ists only to enable the corporation to accomplish the purpose of
its existence, and cannot be invoked to authorize acts only re-
motely connected with the specific purpose for which the corpo-
ration was created.

3. SAME—*it is against public policy for corporation to deal in
real estate.* In Illinois it is against public policy to permit a cor-
poration to own land not reasonably necessary to enable it to
carry on its business, and if it acquires land not necessary for its
corporate purposes it must dispose of it.

4. SAME—*what is not express power to loan money.* Power
of a corporation organized to construct a canal and docks, ship
yards, dock yards, etc., to purchase, possess and occupy real and
personal estate, and to sell, lease and "employ" the same in such
a manner as it shall determine, does not amount to an express
power to loan surplus funds not required for use in its business.

5. SAME—*when loan of money by a corporation is ultra vires.*
A corporation which is proceeding to wind up its affairs has power
to sell such real estate as it does not need, but it has no power to
loan the purchaser a greater amount than the purchase price of
the land as an inducement to make the purchase, and to the extent
of the excess over the purchase price the loan is *ultra vires* and
the contract cannot be enforced.

6. SAME—*all property covered by trust deed is subject to sale
for valid portion of loan.* Where a trust deed is given to secure
a loan of $50,000 by a canal and dock corporation to a person who
purchased a block of land from the corporation for $15,000, the
loan to the extent of $35,000 is *ultra vires,* but all the property
embraced in the trust deed is subject to the lien of the trust deed
to the extent of the valid portion of the loan.

7. SAME—*when party is not estopped to assert defense of ultra
vires.* If a contract made by a corporation is beyond its power it

is void, and the fact that the other party to the contract has received the benefit of it does not raise an estoppel against the right to plead the defense of *ultra vires* when the corporation seeks to enforce the contract. (*Lurton* v. *Jacksonville Building Ass'n,* 187 Ill. 141, followed.)

8. SAME—*power of a corporation to loan surplus funds.* The power of a corporation to make temporary loans of its surplus funds can be exercised, if at all, only for the promotion of the success of the company in carrying out its corporate purposes.

CARTER, CRAIG and DUNCAN, JJ., dissenting.

WRIT OF ERROR to the Branch "B" Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

JESSE LOWENHAUPT, and OSCAR M. WOLFF, for plaintiff in error.

BENTLEY, BURLING & SWAN, for defendants in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This case comes to this court by writ of *certiorari* to review a judgment of the Appellate Court for the First District affirming a decree of the circuit court foreclosing trust deeds at the suit of the Calumet and Chicago Canal and Dock Company and Murry Nelson, Jr., trustee, given by Allen Conkling upon property which will for convenience be referred to as blocks 138 and 139 in the Calumet and Chicago Canal and Dock Company's subdivision in South Chicago. The first of the trust deeds was given by Conkling January 22, 1909, upon both blocks to secure the payment of his notes for $50,000, made payable to himself and by him indorsed and delivered to the dock company. At the time the first trust deed was given there was a street or avenue between the two blocks, which had been dedicated to the public by the dock company. It was afterwards

vacated and the dock company conveyed it to Conkling. The second trust deed was given June 19, 1911, upon this strip of land to secure the same indebtedness and subject to all the terms, conditions and covenants contained in the trust deed of January 22, 1909. Before the bill for foreclosure was filed Allen Conkling was adjudged a bankrupt, and Abel Davis, plaintiff in error, was appointed trustee in bankruptcy of his estate. He was made a defendant to the bill to foreclose. Plaintiff in error answered the bill, setting out in full the act of 1869 incorporating the dock company, and alleged that for many years prior to the giving of the notes and trust deeds Conkling was the owner of block 138, and that if he was indebted to the dock company at the time he gave the first trust deed it was on account of a loan made him by said company; that said corporation had no power or authority to loan money and accept trust deeds as security, and that making the loan and accepting the trust deeds was *ultra vires* and beyond its corporate powers and authority, and that the trust deeds created no lien upon the property superior to the title of the plaintiff in error.

The facts with reference to the transaction between the dock company and Conkling are, that prior to January 22, 1909, Conkling was the owner of block 138, which was mortgaged to secure a loan of $30,000. He applied to Murry Nelson, president of the dock company, for a loan on the property. Nelson testified he first told Conkling's agent who was trying to secure the loan that his company was not in the business of making loans and advised him to go to other parties. Nelson testified Conkling's agent came back later and said Conkling would like to buy some property, and inquired if Nelson's company would make a loan if he bought additional property. These negotiations finally resulted in the dock company selling Conkling block 139 for $15,000, loaning him $35,000 cash and taking his notes for $50,000, secured by trust deed on blocks 139 and

138, which latter block Conkling already owned. None of the purchase price of block 139 was paid by Conkling but it was included in the $50,000 for which the notes and trust deed were given.

After issues were joined in the circuit court the cause was referred to a master in chancery to take the testimony and report his conclusions. The master reported that the notes and trust deed were given as part of a transaction by which the dock company sold Conkling block 139 for $15,-000, and as an inducement for such purchase the dock company gave him credit for the whole purchase price ($15,-000) and in addition loaned him $35,000 out of the surplus funds of the dock company; that the dock company had the power, under its charter, to sell block 139 and to loan Conkling $35,000 as incidental to such sale, and that the notes and trust deeds were valid legal obligations of Conkling. The chancellor overruled exceptions of Abel Davis, trustee in bankruptcy, and entered a decree in accordance with the finding and report of the master. Davis sued out a writ of error from the Appellate Court for the First District to review the decree. That court affirmed the decree of the circuit court, and the case is brought to this court for review upon a writ of *certiorari.*

The Calumet and Chicago Canal and Dock Company was created a corporation by special act of the legislature in 1869. The object of its creation, as stated in section 5 of the act, was to construct a canal from some point on the Calumet river to the south branch of the Chicago river or the Illinois and Michigan canal, as the corporation might determine, and to construct, use, operate, employ and maintain docks, slips, basins, ship yards, dock yards, dry docks, warehouses and piers which the corporation might deem necessary and proper. The corporation was given the right to condemn land for its corporate purposes and to intersect any road, highway or railroad with its canal. It was given perpetual succession and the usual corporate powers to con-

273 − 21

tract and be contracted with, sue and be sued, etc., and to "purchase, possess and occupy real and personal estate, and may sell, lease and employ the same in such manner as it shall determine, * * * and have and exercise all the powers necessary as a corporation to carry out the objects of this act." The capital stock was $500,000, to be divided into shares of $100 each. The corporation has never constructed a canal but appears to have acquired considerable land or land of considerable value, as the president testified its assets were worth about $3,000,000. He further testified it had no other source of income than the sale of real estate.

While part of the dock company's brief and argument is devoted to the proposition that the power given it to acquire and possess real and personal estate and sell, lease and employ the same, etc., is an express authority to loan its money, its principal reliance to sustain the transaction of making the loan is that it was authorized by the implied powers of the corporation. The dock company insists that in view of the powers expressly granted to it, its charter should be construed to imply the power to loan money when the loaning is incidental to the exercise of some express power or where the corporation has surplus funds not required for use in its business. We think it entirely clear that there is no basis for any claim that the power to loan money was expressly given by the act creating the corporation. The power to "employ" its real and personal estate in such manner as it might determine was given for the purpose of enabling the corporation to carry out the object of its creation. While it was expressly authorized to purchase, possess and occupy real and personal estate in the exercise of its legitimate corporate purposes and powers and "employ" the same in such manner as it might determine, this power only conferred authority to acquire property for the purpose, and employ it in carrying out the objects, for which the corporation was created. Having no express au-

thority to loan money, if it possessed any such authority it must be found in its implied powers. The rule is, that corporations can only exercise such powers as are conferred in express terms or by necessary implication. The implied powers are presumed to exist in order that such bodies may be able to carry out the express powers granted and to accomplish the purpose of the corporation's creation. An implied or incidental power must be directly or immediately appropriate to the execution of the powers expressly granted and not one that has a slight or remote relation to it. (*People* v. *Chicago Gas Trust Co.* 130 Ill. 268, and cases there cited.) The enumeration of powers expressly granted implies the exclusion of all others not fairly incidental. A power which the law will imply must be one in a sense necessary or needful and suitable to accomplish the object for which the express powers were granted. (*Central Transportation Co.* v. *Pullman Palace Car Co.* 139 U. S. 24.) Whatever incidental powers are reasonably necessary to enable the corporation to perform its corporate functions are implied from the powers expressly granted. (*People* v. *Campbell,* 144 N. Y. 166.) These general rules are so well settled that further discussion of them or citation of authorities is not required.

The principal question for determination is whether the loan was made as an incident to the exercise of an express power granted. There is no dispute about the facts as hereinbefore briefly stated. It is contended the loan of $35,000 was made for the purpose of effecting the sale of block 139; that the corporation had express power to sell real estate and that the loan was incidental to the sale and therefore was an incident to the exercise of an express power and authorized under the implied powers. The express power given by section 1 of the statute creating the corporation to purchase and sell real estate did not confer authority to deal in real estate by buying and selling it. The only real estate the corporation was authorized to acquire was such as was

reasonably necessary to enable it to carry out the objects of its creation, which were the construction and operation of a canal, ship yards, docks, warehouses, etc. It is contrary to the public policy of this State to permit a corporation to own land not reasonably necessary to enable it to transact its business, and if it acquires land not necessary for that purpose it is required to dispose of it. We do not doubt the power of the dock company to sell its land, for it had never exercised its corporate franchises and therefore had no use for the land. But this sale was not made pursuant to an express power for the purpose of carrying out the objects for which the corporation was created, but rather as a step toward liquidating and winding up the corporation's affairs. If the sale was not made to enable the dock company to carry out the objects of its creation then the loan cannot be considered as made incidental to the exercise of an express power. "A power which a corporation may exercise by implication must be bounded by the purposes of the corporate existence and the terms and intention of the charter, and acts which tend only remotely and by indirection to promote its interests and chartered objects cannot be justified by implication of law but are *ultra vires.*" *People* v. *Pullman's Palace Car Co.* 175 Ill. 125.

We regard it as well settled that implied powers exist only for the purpose of enabling a corporation to accomplish the purpose of its existence, and cannot be invoked to authorize acts only remotely connected with the specific purposes for which the corporation was created. (*National Home Building and Loan Ass'n* v. *Home Savings Bank,* 181 Ill. 35; *First M. E. Church* v. *Dixon,* 178 id. 260; *Best Brewing Co.* v. *Klassen,* 185 id. 37; *Rockhold* v. *Canton Masonic Benevolent Society,* 129 id. 440; *People* v. *Illinois Central Railroad Co.* 233 id. 378; *United States Brewing Co.* v. *Dolese & Shepard Co.* 259 id. 274; *North Avenue Building and Loan Ass'n* v. *Huber,* 270 id. 75; *Central Transportation Co.* v. *Pullman Palace Car Co. su-*

*pra.*) The purpose for which the dock company was created was not to sell land, and although the act expressly authorizes it to do so, its powers in that respect were not enlarged above what they would have been if the power had not been expressly granted. No authority was or could have been given it to buy and sell land for other than corporate objects and purposes. However desirous the corporation may have been to sell block 139 and however advantageous it may have been to the stockholders to loan $35,000 as an inducement to Conkling to buy $15,000 worth of real estate, the corporation could not lawfully make a loan in order to effect the sale. We regard *National Home Building and Loan Ass'n* v. *Home Savings Bank, supra,* as directly in point. In that case the building association bought a lot on which it held a mortgage, which it had the right to do. At the same time and included in the same deed it bought another lot in which it had no interest. The court held the power to purchase property upon which the association had a mortgage, for its own protection, did not authorize it to buy another lot, and that if it could not purchase the lot on which it had a mortgage without buying the other lot it was not authorized to buy at all. So here, the corporation being in process of liquidation and the land not being required for the purpose of enabling it to carry out the objects and purposes of its creation, could lawfully sell it. Such sale, and under such circumstances, however, was not made to aid the corporation in carrying out and accomplishing the objects for which it was organized. Coupling an unlawful act with a lawful one cannot be given the effect of making the unlawful act an authorized and valid act. The corporation had no power, express or implied, to make the loan, and, as said in the case last above cited, if it could not have sold block 139 unless it made the loan then it should not have made the sale. Conceding that under some circumstances a corporation may lawfully make temporary loans of its surplus

funds, this could only be done as a measure for the promotion of the success and prosperity of the company in carrying out its corporate purposes. This court has sustained acts of corporations which, though not expressly authorized, were held to be legitimate efforts to promote the corporate business and the continued existence of the corporation for the accomplishment of the objects of its creation. (*Kraft* v. *West Side Brewery Co.* 219 Ill. 205; *Central Lumber Co.* v. *Kelter,* 201 id. 503.) In the case here under consideration the loan was not made in an effort to promote the corporate objects and purposes or to extend the legitimate business or perpetuate the existence of the corporation. Considered as a loan of surplus funds, as contended by the dock company, made for the purpose of effecting a sale of block 139, it was, under the authorities herein cited, *ultra vires* the corporation and void, and to the extent the trust deeds were given to secure the loan of $35,000 they are void and unenforcible.

Contracts made by a corporation which are beyond the scope of its powers are unlawful and void and cannot be enforced, and in such cases the doctrine of estoppel cannot be applied on the ground that the party against whom it is sought to enforce the contract, having received the benefits of it, cannot be heard to interpose the defense of *ultra vires.* "The objection to the contract is, not merely that the corporation ought not to have made it but that it could not make it. The contract cannot be ratified by either party because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity or be the foundation of any right of action upon it." (*Central Transportation Co.* v. *Pullman Palace Car Co. supra.*) That case was quoted with approval in *National Home Building and Loan Ass'n* v. *Home Savings Bank, supra,* where it was also said: "No action can be maintained upon the unlawful contract, and in such cases, if the courts can afford any remedy, it cannot be done by

affirming or enforcing the contract but in some other manner." That case was followed and approved in *North Avenue Building and Loan Ass'n* v. *Huber, supra.*

The distinction between cases where the corporation's act was beyond its powers and where the act was within its powers but was improperly exercised has perhaps not always been clearly recognized or pointed out, and for this reason there may appear to be some confusion in a few cases. The distinction was clearly stated in *Lurton* v. *Jacksonville Building Ass'n,* 187 Ill. 141, in the following language: "The powers of a corporation are limited and delegated, and where a contract is *ultra vires* in the proper sense, as not being within the powers conferred upon the corporation by the legislature or within the object of its creation, the contract is void, [citing authorities,] but where the contract is one which the corporation has power to make and is within the scope of its franchise, neither party to the contract who has had the benefit of it can set up as a defense that legal formalities were not complied with or that the power was improperly exercised." The correct rule is announced in the cases last above cited as well as in many other cases and in text books. Conkling is not himself interposing the defense of *ultra vires,* but that defense is being made by the trustee in bankruptcy for the benefit of all Conkling's creditors. Whether a different rule should apply under these circumstances need not be determined, for in our view of the law Conkling would not have been estopped from making that defense himself.

Our conclusion from a consideration of the authorities is, that as to the loan of $35,000 the transaction was void and the trust deeds unenforcible. They were valid liens prior to the claim of the plaintiff in error as security for $15,000, the purchase price for block 139, and subject to foreclosure, and all the property embraced therein is subject to sale for non-payment of said sum according to the terms, provisions and covenants of said trust deeds.

The decree of the circuit court and the judgment of the Appellate Court are reversed and the cause remanded to the circuit court for further proceedings not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*

Mr. JUSTICE CARTER, dissenting:

I do not concur in the conclusion of this opinion nor in the reasoning upon which it is based. In my judgment the entire loan may fairly be held an incident to the sale of the real estate in question. The opinion holds the trust deed valid to the extent of $15,000. I fail to see how, then, it can be held that the balance of the loan is entirely void. Does it not necessarily follow from holding a part of the loan valid that the loaning of the balance can only be held to have been an act in excess of power and valid on collateral attack, and not an act wholly beyond and outside the scope of the corporate power of the company? (*Rector* v. *Hartford Deposit Co.* 190 Ill. 380; *People* v. *Shedd,* 241 id. 155; *Golconda Northern Railway* v. *Gulf Lines Railroad,* 265 id. 194.) If it be assumed that the power of the corporation to sell land is not the main, essential power of the corporation but only a subsidiary one, under the reasoning of this court in former decisions this loan may be held to come within the powers incidental to the main or essential purpose of the corporation.

It does not seem to me that the loan was *ultra vires* but rather that it was a legitimate investment of surplus funds of the corporation in an interest-bearing security and within the implied powers of the corporation. The opinion concedes that circumstances may arise when any corporation may lawfully make temporary loans of its surplus funds. This, of course, means whether the corporation be a going concern or in the process of liquidation. Situations may often arise where a corporation will require months, and sometimes even years, to liquidate and when it cannot

wisely or safely distribute its funds to the proper parties as rapidly as they are paid in. What is meant in the opinion by a temporary loan? Does it mean one for thirty, sixty or ninety days, or may it be for six months or longer? Then, too, what kind of security shall be taken? Must each case be determined by its own special facts? Before any corporation is safe in making such a loan, must it be submitted to a court for decision? If a temporary loan can be made under any circumstances, is that not an admission that the corporation is acting within its implied powers in making such loan? How can the doctrine laid down in the opinion be reconciled with the conclusion in this case that the loan of $15,000 is valid? Of course, no one can contend that a corporation such as this, under its charter, is authorized to engage exclusively, or even largely, in the business of loaning money. Can a temporary loan be made by taking as security municipal or other negotiable bonds? Most of such securities are usually for a long term of years but are readily negotiable. If such a loan can be made, why may not a loan be made by investing in a mortgage on real estate? It may well be urged that a mortgage on real estate is a safer investment than many negotiable bonds, and ordinarily, as to large investments, just as negotiable. "This power to loan may reasonably be implied in the case of corporations which, from the nature of their business, must necessarily keep on hand a large fund available for future contingencies. Such corporations ought to have the implied power to loan such surplus funds on security that may be readily converted into cash." (3 Thompson on Corporations,—2d ed.—sec. 2181.) It cannot be that a corporation has the implied power to make a loan only to assist in carrying on an active business. A corporation, while liquidating, must necessarily exercise its implied powers the same as when it is a going concern. The fair test as to the power of a corporation to make a loan should be, not whether the act under discussion will directly pro-

mote the original corporate enterprise, but whether such act is reasonably connected with and adapted to promote some lawful corporate action which the corporation is proposing to take. The activities of a corporation in liquidating its property after the corporate enterprise has been abandoned certainly are not different, in principle, from its activities in endeavoring to carry out the original corporate purpose, and the implied powers must be the same in either case.

But even if it be held that the loan was *ultra vires,* the decision of the court in this case is contrary to the general rule that the defense of *ultra vires* will not be allowed to accomplish an injustice. This court said in *Kadish* v. *Equitable Building Ass'n,* 151 Ill. 531 : "The plea of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but, on the contrary, would accomplish a legal wrong." In *Central Transportation Co.* v. *Pullman Palace Car Co.* 139 U. S. 24, it was said (p. 60) : "A contract *ultra vires* being unlawful and void, not because it is in itself immoral but because the corporation by the law of its creation is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back or compensation to be made for it." In *Logan County Bank* v. *Townsend,* 139 U. S. 67, in referring to an illegal contract, the court said (p. 76) : "The illegality of the contract does not arise from any moral turpitude. The property was transferred under a contract which was merely *malum prohibitum* and where the city was the principal offender. In such case the party receiving may be made to refund to the person from whom it has received the property for the unauthorized purpose, the value of that which it has actually received." In this same opinion, commenting on another

decision, it is stated on the same page: "The court, while assuming that the statute, by clear implication, forbade the bank from making a loan on real estate, refused to restrain the bank from enforcing the deed of trust." The recent authorities, in most jurisdictions if not all, hold that the theoretical notion that the corporation has exceeded its powers or violated some shadowy principle of public policy has largely been abandoned. In such cases the decisions are placed on the more solid ground of damage, either suffered or threatened. "The more modern as well as the correct rule is, that in all such cases the corporation may recover unless the statute says that it shall not. It has been expressly held that where the contract was neither immoral nor against public policy, and no penalty was attached, the corporation could recover on the security though the loan was in violation of the charter." (3 Thompson on Corporations,—2d ed.—secs. 2182, 2119.)

Land-holding contrary to law has always been recognized in this State as against public policy, yet this court in *Walker* v. *Taylor,* 252 Ill. 424, held that where the parties had organized an Iowa corporation to deal in Illinois land, the court would not forfeit their rights to the land but created an equitable claim in their favor against such land.

From a reading of the decisions on the question of *ultra vires* it is quite apparent that the question as to whether a corporation has by its acts exceeded its powers is often a close one and difficult to decide. This court has not heretofore decided any case that would absolutely control on the facts here. Conkling, in this case, had a past-due mortgage on his plant. He had to extend it or his business would be closed. The dock company in good faith lent him the money with which to take up the mortgage and he received the full benefit of the loan. Under such circumstances he certainly could not repudiate this obligation. Under all well settled principles of law, why should Conkling's assignee or creditors have any greater rights, in equity, than

he would have had? It is a rule of universal application that courts of equity will never affirmatively enforce either a penalty or a forfeiture. (2 Story's Eq. Jur.—13th ed.—sec. 1319; 16 Cyc. 80; *Tarr* v. *Stearman,* 264 Ill. 110.) By this decision the dock company, in a court of equity, is being deprived of its property and of any remedy to recover the same. In effect a forfeiture is being enforced. By reason and the great weight of authority, it seems to me, the canal and dock company should be permitted to realize on the security it holds for the amount of its loan. To do so is not to uphold an unlawful contract but rather to enforce the implied contract of Conkling to make compensation for the money, which neither he nor his creditors, in justice, have the right to retain.

CRAIG and DUNCAN, JJ., also dissenting.