### Edwardsville Coal Company, Appellant, v. City Coal Company et al., Appellees.

1. LANDLORD AND TENANT—*evidence of continuance of relation by holding over by corporate tenant.* A coal mine which has been operated for a term of years by a corporate lessee under a written lease is shown to have been operated after the expiration of the term by such lessee as a hold-over tenant from year to year and not by the corporate lessor for its own benefit but in the lessee's name by evidence that there was no change in the method of transacting business after the expiration of the term, all business being transacted in the lessee's name, that the lessor recognized in many ways that the lessee was engaged in the active operation during the period in question and held out to the public and employees in such mine that the lessee was in possession thereof, and which does not show any authorized surrender by lessee or any valid authority from it to the lessor of the right to use the lessee's name but at most an unauthorized agreement so to do by the president of the lessee.

2. CORPORATIONS—*president cannot permit another corporation to operate under his corporation's name.* It being beyond the power of a corporation to turn over its business, affairs and corporate name to the management and control and for the sole use and benefit of another corporation, its president, upon surrender of a lease

Edwardsville Coal Co. v. City Coal Co., 226 Ill. App. 150.

to the corporate lessor, cannot lawfully authorize the lessor to operate the demised premises for its own use and benefit but in the name of the former lessee, and no rights accrue to the lessor under such unauthorized agreement.

3. APPEAL AND ERROR—*waiver of error by failure to argue it.* Alleged error of the trial court in refusing to award damages for the wrongful suing out of a temporary injunction is waived by failure to point out evidence in the record pertaining thereto and to argue such alleged error before the reviewing court.

4. LANDLORD AND TENANT—*right of tenant to reimbursement for improvements.* A lessee of a coal mine under an agreement which requires it to furnish at its own expense all necessary supplies, fixtures and improvements for the operation of the mine, and to render monthly statements to the lessor which receives all the proceeds from the sale of coal mined to be applied to the payment of a debt due it from the lessor, is not entitled to reimbursement from the lessor for rails and iron pipe placed by it in the mine and paid for out of proceeds from sale of coal, where such purchases were reported in the monthly statements under operating expenses and were intended as and considered by the lessee as such.

Appeal from the Circuit Court of Madison county; the Hon. THOMAS M. JETT, Judge, presiding. Heard in this court at the March term, 1922. Affirmed. Opinion filed July 11, 1922. *Certiorari* denied by Supreme Court (making opinion final).

D. G. WILLIAMSON, A. M. FITZGERALD and W. A. RUEGG, for appellant.

M. LESTER GEERS, for appellees.

MR. JUSTICE BARRY delivered the opinion of the court.

Upon a bill for injunction and accounting filed by appellant and with which a number of other suits were consolidated, the court rendered a decree in favor of the City Coal Company and against appellant for $17,777.82. Appellant leased its mine No. 3 to the City Coal Company under a written lease from April 3, 1911, until March 31, 1916, and concedes that the decree is correct providing the court properly held that the lessee continued as a tenant from year to year after March 31, 1916.

In all of the transactions between the two corporations appellant was represented by Mr. Brewster, its general agent. From his testimony and the averments of the bill it clearly appears that after the written lease expired on March 31, 1916, no change was made in the method of transacting business pertaining to the operation of the mine. Everything was done in the name of the City Coal Company just as it had been prior to that date and so continued until April, 1918. The fact is undisputed that, in almost every conceivable way, appellant recognized the City Coal Company to be engaged in the active operation of the mine from March 31, 1916, until April, 1918.

On March 29, 1918, Mr. Brewster prepared the following notice:

"To whom it may concern: On and after April 1, 1918, this mine will be operated by and in the name of Edwardsville Coal Company. F. W. Herzog has been appointed superintendent and all employees will recognize his authority as such.

THE EDWARDSVILLE COAL COMPANY,
By T. T. BREWSTER,
General Agent."

He says he instructed Mr. Herzog to post that notice at the mine because it was customary to do so when there was a change of title or anything of that kind. It is evident, therefore, that so far as the public was concerned the City Coal Company remained in possession of the mine up to that time and this fact was recognized by appellant.

The gist of appellant's contention is that on or about March 31, 1916, Mr. Herzog, as president of the City Coal Company, surrendered possession of the mine and gave appellant authority to operate it thereafter for its own benefit in the name of the City Coal Company. At that time the latter company owned certain personal property which was being used in the mine. No claim is made that Mr. Herzog made a gift of that property or the use of it to appellant, and yet, there-

after, it was used at the mine as before. The City Coal Company was heavily indebted to appellant at the time it is alleged the surrender was made, but there is no claim that there was any agreement as to how the debt should be cared for or that the value of the said personal property should be credited thereon.

After March 31, 1916, the City Coal Company made monthly reports to appellant and appellant prepared monthly statements of the account between the two companies from which it appears that by January 1, 1917, the entire debt of the City Coal Company was fully paid as well as all rent to that date.

Subsequent monthly statements of the account show that appellant retained in its hands the proceeds from the sale of coal except that it placed a sufficient amount to the credit of the City Coal Company to enable it to pay the operating expenses. The fund which thus accumulated in the hands of appellant is the amount for which the court required it to account. When the original lease was made the City Coal Company gave appellant a car sales contract which authorized it to sell and collect for all coal mined and loaded on railroad cars.

Mr. Brewster testified that the reason for conducting the business in the name of the City Coal Company after March 31, 1916, was because Mr. Herzog was president of that company and appellant was not desirous of being identified with the operation of the mine. Appellant does not claim that it had authority from anyone, other than Mr. Herzog, to operate the mine in the name of the City Coal Company, nor does it appear that anyone connected with that company, other than he, knew that appellant claimed to be operating the mine for its own exclusive benefit until about April 1, 1918. There is even grave doubt whether Herzog knew it before March 29, 1918.

The mine could not be operated in the name of the City Coal Company without rendering it liable for op-

erating expenses and the damages that might accrue by reason of the death or injury of employees at the mine. To so operate it for the sole benefit of appellant would be an attempt to subject the City Coal Company to a legal liability with reference to a matter in which it had no interest whatever. It would be simply an attempt to render it liable for the debts of appellant.

We are of the opinion that an agreement to so use the name of the City Coal Company could not be made by the president of the company or by its board of directors because it is beyond the power of the corporation and contrary to public policy. *Dobson v. More*, 164 Ill. 110; *Wheeler v. Home Savings & State Bank*, 188 Ill. 34; *Calumet & Chicago Canal & Dock Co. v. Conkling*, 273 Ill. 318.

When the City Coal Company was organized the statute then in force expressly provided that its corporate powers should be exercised by a board of directors or managers. J. & A. St. par. 2423. Unless otherwise provided, the implication in a grant of corporate power and life is that the corporation shall exercise its power and carry on its business through its own officers and employees, and not indirectly through another corporation operated under its control, and that it shall maintain an independent corporate existence and not surrender the control of its affairs or the exercise of its powers to another corporation. *Anglo-American Land, Mortgage & Agency Co., Ltd. v. Lombard*, 132 Fed. 721-736.

In *Bishop v. American Preservers' Co.*, 157 Ill. 284, at page 313, our Supreme Court said: "The provisions of the General Incorporation Act of Illinois are to the effect that every corporation organized in this State must manage its own affairs separately and exclusively, and cannot enter into any contract or relation by which it is divested of such power of exclusive management, or by which its franchises are vested in a partner or any outside board, with equal power to direct its business."

In *Anglo-American Land, Mortgage & Agency Co., Ltd. v. Lombard,* 132 Fed. 721, at page 736, the Circuit Court of Appeals said: "Conceding that a corporation of a private character, not charged with any public duties, may, in pursuance of appropriate action on the part of its stockholders, sell all of its property, wind up its affairs and permanently retire from business, still, in the absence of express authorization, neither the corporation nor its stockholders can, incidental to the sale of its property or otherwise, clothe another corporation with the right to maintain the corporate life or exercise the corporate powers."

From the foregoing authorities it is apparent that it is beyond the power of a corporation to turn over its business and affairs to the management and control and for the sole use and benefit of another corporation. It necessarily follows that the president of the City Coal Company could not lawfully authorize appellant to continue the operation of the mine in the name of his company.

From a careful consideration of all the evidence, we are of the opinion that appellant failed to prove that the mine was operated under such an agreement after March 31, 1916.

The City Coal Company assigns cross error to the effect that the court erred in refusing to charge appellant with $3,040.40 as damages for the wrongful suing out of the temporary injunction. No argument is made in support thereof. Counsel have not directed the court's attention to the evidence, if any, pertaining thereto. They simply say that the master allowed that item in his original report and no reason is assigned, nor can be, for its elimination in his modified report. The abstract of record contains 565 pages, and if counsel really considered the point as well taken they should argue it and direct the attention of the court to the evidence, and for a failure to do so the alleged error must be regarded as waived.

Cross error is also assigned to the effect that the court should have required appellant to pay the City Coal Company for certain rails of the value of $5,553.93 and certain black iron pipe of the value of $1,000, all of which was placed in the mine and paid for out of the proceeds derived from the sale of coal. In the monthly statements rendered by the City Coal Company to appellant when those items were purchased they were reported as operating expenses.

The lease required the lessee to furnish at its own expense all supplies, fixtures and improvements that may be needed or required in operating the mine. When purchased they were intended as and considered by the City Coal Company to be a part of the necessary operating expenses. We are of the opinion that the court did not err. in refusing to require appellant to pay for said rails and pipe.

Fnding no reversible error in the record the judgment is affirmed.

*Affirmed.*