A. B. Culhane, Appellant, v. The Swords Company, Appellee.

Gen. No. 8,867.

Opinion filed July 6, 1935.

C. H. LINSCOTT, of Rockford, for appellant.

LARGE & RENO, of Rockford, and EARL K. SCHIEK, of Chicago, for appellee.

MR. JUSTICE HUFFMAN delivered the opinion of the court.

This was a suit on two notes, brought by appellant against appellee. One note was for $20,000. No controversy existed regarding appellee's liability on this note. The second note was for $50,000, executed on behalf of appellee by S. E. Smith and Thos. H. Connors, its vice presidents.

At the time the Rockford National Bank, of which appellant is receiver, suspended business, appellee had on deposit therein to its credit the sum of $16,790.28. Appellant in this suit sought to apply an offset for the above amount against the $50,000 note, thus leaving a balance claimed due thereon of $33,209.72. Appellee denied liability upon the $50,000 note and claimed that its set-off should be allowed against the $20,000 note. The cause was heard before the court, without a jury. The court gave judgment in favor of appellant and against appellee for the sum of $3,777.47. The judgment was rendered upon the $20,000 note after allowing appellee a set-off for its bank deposit, and including in such judgment the interest due at the time of rendition thereof. The court found that appellee was not liable upon the $50,000 note, and appellant has prosecuted this appeal from the above judgment of the trial court.

An examination of this record presents a most unusual situation, and one that is difficult to solve. It contains many inconsistent transactions which are left unexplained.

Mr. Dennis F. Swords was president of appellee corporation. He negotiated with the First National Bank of Chicago, through the Rockford National Bank, for the purchase of 7,025 shares of the common stock and

125 shares of the preferred stock of the National Refrigeration Corporation. He had had an individual deposit account of $175,000 in the Central Trust Company of Chicago. It appears that he had expected to pay for the above stock from that account. Upon making arrangements for the purchase of this stock, it was discovered that the above account in the Central Trust Company was exhausted. The Rockford National Bank procured the stock for Mr. Swords from the First National Bank of Chicago, paying therefor a purchase price of $54,941.66. This purchase was completed by the Rockford National Bank by having the First National Bank of Chicago send to it the stock and charge its account at that bank with the purchase price therefor.

The transaction is first reflected upon the books of the Rockford National Bank under date of November 4, 1930, upon which date the said Dennis F. Swords gave his individual note to the Rockford National Bank for the sum of $54,941.66, representing the purchase price of said stock. Subsequently, and on November 14, 1930, the records of the bank disclose a shifting of this liability from Swords to appellee corporation. This was accomplished by crediting Swords with the payment of his note and entering upon the liability ledger sheet of appellee corporation a debit for said amount, which is evidenced by its note No. 26,676. This note was signed by Smith and Connors, as above stated. While it bore date of November 4, 1930, it did not appear upon the note journal sheet of said bank as having come into the bank, until November 14, 1930. These two notes were held by the bank and the liability was switched back and forth between Swords and appellee company a number of times. Long subsequent to the above dates, the note of Swords for $54,941.66 was split into two notes, one for $50,000 and one for $4,941.66. This last named note was paid by Swords

through appellee corporation and charged to his personal account therewith. A new note of appellee came into the possession of the Rockford National Bank, in the sum of $50,000, representing the same indebtedness as evidenced by the original transaction above set out. The note transactions as carried on by the bank will be discussed later, it being the purpose at this time to identify the subject matter of this litigation.

Appellee filed seven pleas to which appellant filed replications. The first plea was the general issue. The second plea was to the effect that appellee was indebted to appellant upon only the $20,000 note and that as against this note appellee was entitled to a set-off of $16,739.90, because of money which it had on deposit in the bank at the time it suspended business, and averred that it was in no manner indebted to appellant because of the $50,000 note. The third plea set up that the $50,000 note was executed without consideration and denied that apppellee ever received any consideration for such note. It alleged that it was an individual transaction of D. F. Swords and that any consideration therefor that might have passed was received by him. To this plea appellant replied that appellee did receive valuable consideration therefor because of the fact that appellee received from appellant the stock of the National Refrigeration Corporation and alleged that appellee took and used same for its own benefit. The fourth plea denied the right and authority of Smith and Connors to sign the name of appellee to the $50,000 note. To this plea appellant replied double, first, that Smith and Connors were authorized to sign the note; and second, that it had been the habit and custom of appellee in dealing with this bank, for Smith and Connors to sign appellee's notes in the manner in which this one was signed, and that the bank relied upon this custom in accepting this note. The fifth plea set up the purpose of the

corporate existence of appellee and alleged that no power was granted to it by its charter nor by any power incident to the expressed powers, giving it the right to make accommodation contracts such as this one, or to become a guarantor or surety or otherwise lend its credit as in this case. The plea again denied any consideration or benefits received by appellee, and averred that the note as signed by Smith and Connors was solely for the purpose of lending credit to D. F. Swords as an individual, and that appellant bank had knowledge of this fact. The plea further alleges the act of Smith and Connors in signing the corporate note was ultra vires and not binding on appellee. The sixth plea was the plea of the general issue, sworn to. The seventh plea alleged that Smith and Connors at the instance of appellant and D. F. Swords, executed the $50,000 note and in so doing were induced by fraud and undue means; that it represented the personal indebtedness of D. F. Swords; denied any consideration therefor passing to appellee; averred that appellant and Swords fraudulently interchanged the note of D. F. Swords and that of appellee corporation in the assets of said bank, from time to time, for the purpose of concealing facts from the national bank examiners, and for the purpose of misrepresenting the true status of the personal account of D. F. Swords with said bank; and further averred that the interchange of these notes in the assets of the bank was done not only for the purpose of misleading the bank examiners, but for the additional purpose of falsely and fraudulently misrepresenting the financial condition of D. F. Swords to the creditors and stockholders of appellee corporation. The plea set up and alleged various shifting or interchange of the note of D. F. Swords with that of appellee from time to time by said bank, alleging knowledge on the part of appellant and that the transaction with respect to the $50,000 note

was fraudulent and unauthorized on the part of appellee corporation; that the acts of the bank in substituting one note for the other from time to time were not the deeds of appellee nor done at the instance of appellee, but to bolster the credit standing and solvency of the bank and of D. F. Swords as the occasion required.

The replications filed by appellant, other than as above noted, were of general denial.

The facts in this case as disclosed by the evidence present a most unusual situation with respect to the transaction involving the National Refrigeration Corporation stock, which cost $54,941.66, and for which D. F. Swords gave his note to appellant bank, and which was later replaced by substituting appellee's note for said amount, together with the subsequent manipulations whereby the note was changed to the sum of $50,000 and D. F. Swords retired the difference of $4,941.66. It is apparent that the bank had in its possession at all times both the note of D. F. Swords and the note of appellee corporation for the same indebtedness, originally incurred by D. F. Swords as an individual, and for which he at the time of the purchase of said stock placed his individual note in the bank evidencing his indebtedness for the purchase price thereof.

The liability ledger sheet of Dennis F. Swords shows his note for $54,941.66 charged against him under date of November 4, 1930, and indicates that the same was paid on November 14, 1930. His ledger sheet further shows that on December 28, 1930, he was again charged with his note of $54,941.66 and his ledger sheet indicates that this note was again paid on March 14, 1931. The entry of December 28, 1930, charging him with his note for the second time, does not appear upon his liability ledger sheet until subsequent to regular entry made thereon under date of February 23, 1931. The

entry of December 28, 1930, therefore could not have been made in the regular course of business, otherwise it would not follow regular entries made prior thereto, the last of which was on February 23, 1931. Furthermore, December 28, 1930, fell upon Sunday, which is an additional reason why this transaction nor the entry thereof is correctly reflected by the bank's records.

The note journal sheet of the Rockford National Bank for November 14, 1930, discloses that Dennis F. Swords is credited with payment of his note for $54,-941.66 by substituting therefor a note of appellee company for the same amount.

The liability ledger sheet of appellee company discloses that it was charged on November 4, 1930, with its note for $54,941.66. However, the note journal sheet of the bank shows that this note of appellee company did not come into the bank as an actual transaction until November 14, 1930, upon which date Swords is credited with the payment of his note for said amount. Subsequently, the liability ledger sheet of the appellee company indicates that its said note was paid on December 28, 1930 (which was on Sunday), and the liability ledger sheet of Swords discloses that upon said date he was again charged with said sum of money and his note again placed among the assets of said bank. This entry of December 28, 1930, clearly shows an erasure and alteration of the record. Under date of November 4, 1930, a second entry is made against appellee company for its note for the same amount, which is indicated by the records of the bank as having been paid under date of November 3, 1931.

The note journal sheet for March 6, 1931, shows the appellee company credited with payment of its note for $54,941.66 and this amount again charged to Dennis F. Swords upon his note, and the same again placed in the assets of the bank. It is apparent that the Rock-

ford National Bank had these two notes in its possession during the entire time; that they both represented the same indebtedness; and that when the bank placed one of the notes in the assets of the bank and charged the maker thereof with liability thereon, that at such time it credited the maker of the other note with payment thereof and took such other note out of the assets of the bank. The bank's records do not disclose at any time that either of these notes was taken or held as security for the payment of the other, but each transaction discloses that it was an individual liability, which upon the records of the bank is reflected as being owed solely by the maker of the note that was then being held in the note file and assets of the bank. There is nothing upon either note nor in the transactions of the bank as disclosed by its records, to indicate that either note was taken or held at any time as security for the other.

Mr. Burpee had been president of the Rockford National Bank for many years and had had many dealings with D. F. Swords. It appears that Swords was anxious to secure control of the National Refrigeration Corporation by the purchase of its stock. Mr. Burpee had communicated with the First National Bank of Chicago, wherein he advised this bank that Mr. Swords had arranged for the purchase of this stock, and that it was his understanding that the same was held by that bank as collateral to a loan. The First National Bank of Chicago wrote Mr. Burpee that it held the stock and in the manner in which he was advised, and that it had instructions to deliver the stock to D. F. Swords through the Rockford National Bank, upon payment of $54,941.66. Following this, and on November 3, 1930, the First National Bank of Chicago advised Mr. Burpee, as president of appellant bank, that they were forwarding to him under separate cover the aforesaid stock, and that they had charged to the

account of his bank the sum of $54,941.66 in payment of same. Mr. Burpee acknowledged receipt of this letter, and this stock was paid for by his bank, the Rockford National Bank. The bank thereupon took the personal note of D. F. Swords for the above amount of money, which note was No. 27,299, dated November 4, 1930, and duly entered against him upon his liability ledger sheet at said bank.

Under date of November 14, 1930, the ledger sheet of appellant bank containing the account of D. F. Swords, indicates the payment of the above loan and the assumption of the same liability on the part of appellee corporation, which liability appears upon its ledger sheet in said bank, and is evidenced by note No. 27,676, which note bears date of November 4, 1930. The bank kept daily records of note and loan transactions in addition to the liability ledger sheets of its customers. These daily records of note and loan transactions were kept in the note journal, and the transactions for each particular day were entered upon the proper sheet in this journal, and thereafter entered upon the liability ledger sheets. The note journal sheet for November 14, 1930, shows the entry of said note No. 27,676 of appellee for the sum of $54,941.66 and the payment of note No. 27,299 of D. F. Swords, for the same amount. It is not explained how appellee's note came to be dated November 4, 1930, and if it was received on that date, why it was not duly entered on the records at such time. The debt was subsequently switched back to D. F. Swords' individual account and his note given a new number of No. 2,309, under date of December 28, 1930. This note does not appear to have been entered on the liability ledger sheet of the bank under the account of Mr. Swords until after regular banking entry of other transactions made thereon under date of February 23, 1931. It is apparent that the above entry was not made in the

due course of business on December 28, 1930, but had to be made on a date after February 23, 1931. The liability ledger sheet of appellee corporation indicates that the payment of its note No. 27,676, dated November 4, 1930, and received on November 14, 1930, was made on December 28, 1930. This entry date of December 28, 1930, is written over an erasure, which is left unexplained. December 28, 1930, fell on Sunday, which is additional proof that the entry could not have been made in the regular course of business. The switching of the liability under the above date does not appear upon the note journal of the bank until March 6, 1931, when appellee corporation's account is credited with $54,941.66 as of December 28, 1930, being payment of note No. 27,676, and upon the next line following such entry appears a debit of such amount to D. F. Swords, charging him individually with said amount by virtue of his note with the new number of No. 2,309, under date of March 5, 1931. Again, on the ledger sheet of D. F. Swords appears an entry under date of March 14, 1931, whereby his note is credited with payment by again substituting appellee's old note No. 27,676, dated November 4, 1930, and assigning to appellee's old note a new number, No. 2,622, and again entering the same upon the liability ledger of appellee corporation as having been received under date of November 4, 1930. The ledger sheet shows this note paid under date of November 3, 1931.

The bank's records regarding these two notes cannot be reconciled. The officers and employees of the bank who were called as witnesses and who had charge of the records in question, could offer no explanation or solution thereof. The cashier of the bank admitted that the records indicated no indebtedness due from either D. F. Swords or appellee on December 30, 1930, and that the entries made with reference to the above transactions could not be possible. He denied having

anything to do with same or knowing who handled them.

The original note of appellee No. 27,676, and which had been changed to No. 2,622 on March 14, 1931, was carried on the bank's records until October 30, 1931, when two notes were substituted therefor in the principal sums of $50,000 and $4,941.66. The smaller note was later paid by D. F. Swords through appellee, and charged to his personal account with appellee company. The $50,000 note was signed by Smith and Connors, vice presidents of appellee corporation. The interest thereon as it was paid was charged to the personal account of D. F. Swords.

Connors was in charge of the plumbing and heating department of appellee corporation. He severed connections with the company in February, 1933. He gave no testimony as to the nature of the transaction out of which the $50,000 note arose or what knowledge he had of same. Smith had charge of the electrical division of appellee company. He states he had nothing to do with the financing of the company; that Mr. T. E. Swords looked after this part of the business until his death in September, 1930, whereupon Mr. Dennis F. Swords took charge of the general operation and supervision of the company. He states that Mr. Swords would bring in a note and say "sign it," whereupon he would sign it. He had no knowledge of what was done with respect to the notes involved in this case. He says that he signed what he was told to sign by Mr. Swords. He remembers no date on the note and he is unable to say when the same was signed. He remembers taking the notes to the bank and bringing back and delivering to D. F. Swords General Refrigeration Corporation stock. The witness states that while acting as vice president, he signed approximately 200 notes payable to different banks; that all he was told was to sign, and that was all there was to it.

It appears that the last shifting of the notes of D. F. Swords and appellee corporation occurred during the month of March, 1931. The note journal sheet for March 6, 1931, shows appellee credited with the payment of its note No. 27,676, and the debt shifted to D. F. Swords, and his individual note substituted for appellee's note. Following this, the note of D. F. Swords appears to have been replaced by appellee's note on March 14, 1931. This was appellee's note No. 27,676, dated November 4, 1930. A new number was assigned to this old note at this time and it was then designated as No. 2,622, and was again entered upon the liability ledger sheet of appellee as having been received under date of November 4, 1930, and the individual note of Swords was then credited with payment upon his liability ledger sheet. The officers and employees of the bank were unable to explain the handling of these two notes and the discrepancies existing in the records with respect thereto. This court is likewise unable to reconcile the transactions, due to the fact that, as the cashier of the bank stated, they could not have occurred as reflected by the records.

While appellant makes no statement of errors relied upon for reversal, as required by the rules, yet appellant argues that appellee corporation is bound by the acts of its officers in respect to the $50,000 note, and that no one should be permitted to take advantage of his own wrong, and therefore appellee is estopped from any defense against the note in the hands of the receiver in this case.

A receiver of a national bank is a mere trustee for creditors, and he takes the assets subject to all claims and defenses that might have been interposed against the insolvent corporation. *Scott v. Armstrong*, 146 U. S. 499, 36 L. Ed. 1059; *Williams v. Green*, 23 F. (2d) 796; *Hatch v. Johnson Loan & Trust Co.*, 79 Fed. 828; *Cutler v. Fry*, 240 Fed. 238. Appellant urges that the

bank had no notice or knowledge that the purchase of the National Refrigeration stock was by Swords as an individual and that the note of appellee corporation which came into the bank was an accommodation paper executed as security for the personal obligation of D. F. Swords, and that the bank proceeded upon the theory that such note was a bona fide transaction. We are not impressed with this argument. Swords was dealing with the bank in his own individual capacity at the time he purchased this stock. He had intended to pay for it with his own funds. When it was discovered that these funds were exhausted, the bank secured the stock for him and had the cost price thereof deducted from its balance at the First National Bank of Chicago. The stock was transmitted to the Rockford National Bank, and that bank took Swords' individual note for the purchase price thereof. Nothing is reflected by this transaction to disclose that Swords was in any way acting as an officer or agent of appellee corporation.

The president of the bank knew that Swords was buying this stock, and had corresponded with the First National Bank of Chicago on behalf of Swords, relative thereto. In addition to this, he had the First National Bank of Chicago send the stock to him and to acquire payment therefor by charging his bank's deposit account in the First National Bank of Chicago, with the price of the stock. When he received the stock, Mr. Swords came in and gave his personal note for the purchase price of the same and the note went into the assets of the bank and was entered upon D. F. Swords' liability ledger sheet. The evidence also shows that the president of the bank knew of Swords' transactions and purpose regarding this stock; and that Mr. Goodwillie, vice president of the bank, also knew of Swords' plans and intentions. In addition to this, the bank is chargeable with notice of the fact

that when appellee's note was brought to the bank, appellee did not receive a loan of $54,941.66, or a loan of any amount of money because of such note. The subsequent substitution of the one note for the other, with the resulting entries of the bank showing payment each time of the note that had been taken out, and a recharging of the liability against the maker of the note that was substituted, and the retention at all times by the bank of the two notes, for the same debt, certainly was sufficient notice to it that both of these parties were not indebted for the same liability. Neither can it be argued that appellee's note was held as collateral security for D. F. Swords' note, because each note when it appeared upon the bank's records as a liability against the maker thereof, was an individual and original obligation without having any reference to the other note as security therefor. In other words, when D. F. Swords' note appeared as an obligation due by him to the bank, it appeared alone, and appellee's note by the bank's records was credited with payment; and when appellee's note appeared as a liability against the maker thereof upon the bank's records, D. F. Swords' note was by the same records credited with payment. Neither of these notes by the records of the bank appears to have been held as security for the other, but on the contrary, the records of the bank refute any such argument.

D. F. Swords was desirous of securing enough stock in the Winnebago Company, a corporation, to bring such company under control or into a merger with appellee corporation. In his plans to effect this result, he brought under his control 51,682 shares of the General Refrigeration Corporation stock. He then made an offer to the Winnebago Company that the General Refrigeration Corporation stock would be transferred and conveyed to the Winnebago Company for common stock of that company at the ratio of 10 shares of Re-

frigeration Corporation stock for one share of the Winnebago Company stock. This offer was accepted by the Winnebago Company and pursuant to the exchange of stock, Mr. Swords personally received 4,377,-125 shares of the common stock of the Winnebago. Company. The Refrigeration Corporation stock which was transferred to the Winnebago Company included the 7,025 shares of the Refrigeration Corporation stock, which had formerly been held by the bank as security upon Swords' note given therefor at the time of the purchase of such stock. D. F. Swords owned 43,771.25 shares of the 51,681.75 shares of the Refrigeration Corporation stock, which was traded to the Winnebago Company for shares of its capital stock as above. This transaction did not occur until the latter part of December, 1930, which was about two months subsequent to November 4, 1930, when appellee's note found its way into the bank in connection with D. F. Swords' note. The Winnebago Company subsequently surrendered to appellee corporation the General Refrigeration Corporation stock which it had received from D. F. Swords and others, and conveyed all of its assets to appellee corporation in lieu of 21,534 shares of new common stock of appellee corporation. Mr. Goodwillie, vice president of the Rockford National Bank, knew about the above transactions and Mr. Burpee, the president of the bank, assisted in the plans as carried out. There is an absence of any showing that appellee corporation ever secured any property right in the 7,025 shares of the National Refrigeration Corporation stock in question in this case, until after D. F. Swords and his associates had transferred the stock to the Winnebago Company in consideration of the transfer of its shares of stock to them as individuals, and subsequently thereto when a merger of the two companies was had, and appellee corporation issued new shares of common stock to the Winnebago

Company for its assets. The shareholders of the Winnebago Company stock thereupon received their proper number of appellee corporation's new issue of common stock.

An audit of appellee corporation made by Edward Gore and Company, certified public accountants of Chicago, as of December 31, 1930, in its schedule listing the investments of appellee company, does not list any General Refrigeration Corporation stock, although it does list various other stocks held by appellee corporation at that time, the cost of which is shown to have been $120,589.51. This audit also shows the notes payable by appellee corporation at banks, which notes total the sum of $930,000. No note appears payable to the Rockford National Bank of Rockford, Illinois. The evidence shows that Mr. Burpee, president of the bank, received a copy of this audit and acknowledged receipt and examination thereof, and stated that the same had been placed in the confidential file of the bank. It was also examined by Mr. Baker and Mr. Adkinson, assistant cashiers of said bank.

Under the facts and circumstances existing in this case, we are not of the opinion that the doctrine of estoppel can be applied to appellee. We are of the opinion from the facts as disclosed by the record, that the officers of the Rockford National Bank at all times had knowledge of what was going on and acted with this knowledge. An officer of a corporation does not have authority to execute a corporate note for a personal obligation. *Dobson v. More,* 164 Ill. 110; *Leigh v. American Brake-Beam Co.,* 205 Ill. 147; *Merchants' Nat. Bank of Peoria v. Nichols & Shepard Co.,* 223 Ill. 41. The general rule is that the powers of a corporation are limited to those which are express or implied, and that such corporation can only do those acts which are within the scope of its charter. A corporation has no implied power to indorse notes for the

mere accommodation of another, when such transaction is foreign to the objects for which such corporation was created. Fletcher Cyc. Corp., vol. 2, p. 1911. In the absence of express authority, a corporation has no power to enter into a contract as surety or guarantor for another. Such an act subjects the assets of the corporation to risks wholly different from that for which it was created. Fletcher Cyc. Corp., vol. 2, p. 1869. And it can make no difference that the corporation might possibly be indirectly benefited by the contract, if the same is not within the scope of its business. Fletcher Cyc. Corp., vol. 2, p. 1870; *Best Brewing Co. v. Klassen,* 185 Ill. 37; *Calumet & Chicago Canal & Dock Co. v. Conkling,* 273 Ill. 318, 324. A corporation has no power to become the surety for another or to pledge its corporate assets for the payment of a debt of another, for which it is not responsible. Such acts are ultra vires and void. *Wheeler v. Home Savings & State Bank,* 188 Ill. 34; *Mazer Co. v. Blauer-Goldstone Co.,* 259 Ill. App. 305; *Mercantile Trust Co. v. Kastor,* 273 Ill. 332; *Calumet & Chicago Canal & Dock Co. v. Conkling, supra.* If there is no power to make the contract there can be no power to ratify it. An ultra vires act cannot be ratified and there can be no estoppel to such act. Acquiescence by a corporation in the unauthorized acts of its officers in a matter outside of its corporate powers, cannot give rise to an estoppel. *Wheeler v. Home Savings & State Bank, supra; National Home Bldg. & Loan Ass'n v. Home Savings Bank,* 181 Ill. 35; *Mercantile Trust Co. v. Kastor, supra; Calumet & Chicago Canal & Dock Co. v. Conkling, supra; Steele v. Fraternal Tribunes,* 215 Ill. 190.

It is urged by appellant that in surrendering the stock which had been purchased by D. F. Swords and for which it held his note, the same was surrendered to appellee corporation and that therefore it should be

estopped from denying liability upon its note, having received the collateral pledged to secure the note of D. F. Swords. We are of the opinion from the evidence that the stock when surrendered by the bank was surrendered at the instance of D. F. Swords and upon his request and at his instructions. In addition to this, it passed directly to his individual control. We are of the opinion from the evidence that the officers of said bank fully understood that the stock was being surrendered to Mr. Swords as an individual for the purposes that he thereafter used it for, and that the same was not only with the knowledge of the officers of the said bank, but pursuant to a plan which had been discussed by Swords with them and which they fully understood and agreed to.

Severe financial and economic depressions bring about a redistribution of property and a new grouping of ownership and control thereof. In the midst of sudden disaster, men resort to extreme measures in an effort to prevent their life savings from being swept away. It is with an understanding compassion that we view such attempts to thwart failure. Under such circumstances, men are not disposed to resign tomorrow's tangle to the winds, but they resort to divers attempts to avert impending misfortune. Unfortunately, they can only gauge the future by their experience in the past, with the result that their efforts to escape the threatening danger often result in greater misfortune. Mr. Thomas E. Swords and Mr. Dennis F. Swords were brothers and built up appellee corporation which was commonly called the Swords Brothers Company. Mr. Thomas E. Swords, now deceased, was president of the company for many years. After his death in September, 1930, he was succeeded by Mr. Dennis F. Swords, who severed his connections with the company in February, 1933. Appellant bank is in receivership.

The evidence in this record presents such a state of facts as are incompatible with any other conclusion than that reached by the trial court. The judgment of the trial court is therefore affirmed.

*Judgment affirmed.*