CHARLES E. RECTOR

*v.*

THE HARTFORD DEPOSIT COMPANY.

*Opinion filed April 18, 1901—Rehearing denied June 7, 1901.*

1. EVIDENCE—*in construing a lease the intention must be gathered from the words used.* In construing a provision of a lease the court can not consider a statement contained in the stipulation of facts as showing a particular effect intended to be given to such provision which is not expressed in the provision itself nor otherwise apparent from the terms of the lease, where an objection is made to the consideration of such statement, under the terms of the stipulation providing that either party may object to the consideration of any fact stipulated to be true, as being incompetent or irrelevant.

2. LEASES—*what does not relieve the lessee from covenant to pay rent.* Where a lease requires the lessor's written consent to the lessee's assignment of the lease, but provides also that the "above provisions" may be modified to the extent that the lessee may at any time assign the lease, or the unexpired portion of the term demised, to any reputable person, firm or corporation, such modification does not operate to relieve the lessee from liability for rent upon his assignee's default in making payment, where the lessor, in consenting in writing to the assignment, specifies that he does not release the lessor from his obligation to pay rent.

3. CORPORATIONS—*abuse of corporate powers with respect to real estate cannot be shown in defense of suit for rent.* In an action for rent of a portion of a building erected by a corporation and partly occupied by it for corporate purposes, the defendant cannot show, in defense, that the corporation has abused its powers with respect to its real estate in erecting a larger building than is needed for the carrying out of its corporate purposes.

MAGRUDER, J., dissenting.

*Hartford Deposit Co.* v. *Rector*, 92 Ill. App. 175, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

THORNTON & CHANCELLOR, for appellant.

HUGH L. BURNHAM, for appellee.

Mr. CHIEF JUSTICE BOGGS delivered the opinion of the court:

The appellee company, as lessor, and the appellant, as lessee, entered into a written lease of certain premises, which lease contained a warrant of attorney authorizing a confession of judgment for unpaid rents. The appellee company procured judgment to be entered against the appellant in the superior court of Cook county under said warrant of attorney for an amount claimed to be due for rent of the premises, but upon motion of the appellant the judgment was opened and the appellant let in to plead. The issues thus raised by the pleadings were (1) the release of the defendant from any and all covenants of the deed or lease, including the covenant to pay rent; (2) the surrender of the term by the defendant and its acceptance by the plaintiff; and (3) that the execution of the written lease was an act *ultra vires* and void. Trial by jury was waived and the issues submitted to the court upon a stipulation as to the facts in part and on oral testimony heard by the court on other points. The issues were found for the appellant and judgment was rendered against the appellee company for the costs, but on appeal to the Appellate Court for the First District such judgment was reversed and judgment was entered in said Appellate Court against the appellant, Rector, in the sum of $742.50. That was the amount for which the judgment by confession was rendered, and it was stipulated by the parties, on the hearing, that if the judgment by confession should be found to be otherwise correct, judgment in that amount should be rendered. A certificate of importance was granted and this appeal perfected to this court.

The lease covenanted for the payment by the appellant of the sum of $300 per month as rent for the demised premises. It was stipulated on the hearing, among other things, that appellant assigned his interest in the lease

to one Clayton, who took possession of the leased premises; that the appellee company endorsed on the lease its consent to such assignment, but expressly in such endorsement refused to release the appellant from the obligation to pay the rental after the assignment; that Clayton occupied the premises and paid to the appellee company the rent stipulated in the lease for a number of months, but finally made default, whereupon the judgment by confession was entered in an amount conceded to be the amount unpaid by Clayton under the terms and conditions of the lease.

The question first to be determined is the contention of the appellant that the provisions of the lease operated to relieve appellant from any further liability to pay the rent stipulated by the lease to be paid, after the assignment of the lease to Clayton. This contention is based upon an unwarranted construction of certain provisions of the lease. The third clause of the lease, standing alone, denies to the lessee the right to assign the lease, or underlet the whole or any part of the premises, or to permit any other person to have desk room therein, without the written consent of the appellee company. At the foot of the lease, as a part of the eighth and last clause thereof, the following appears: "And the said party of the first part hereby agrees that the above provisions may be modified to the extent that the said party of the second part may, at any time hereafter, assign this lease and the term thereby demised, or the unexpired portion thereof, to any reputable person, persons or corporation."

A statement was inserted in the stipulation of facts, as follows: "Just prior to the time of its execution, and as a part of the transaction of framing and executing the lease, the plaintiff, through its agents, and the defendant, consulted with regard to the terms of the lease. The lease in its present form was prepared by the plaintiff's agents, excepting that it did not contain the following clause: 'And the said party of the first part hereby

agrees that the above provisions may be modified to the extent that the said party of the second part may, at any time hereafter, assign this lease and the term hereby demised, or the unexpired portion thereof, to any reputable person, persons or corporation.' This was submitted to Mr. Rector and was declined, and he stated that he desired the lease prepared in such form that if he should desire to sell out at any future time and should find some reputable person to take his business, he desired to have the privilege of selling his business and transferring his lease and relieving himself of any further responsibility, whereupon the clause just referred to was drawn and submitted to plaintiff's agents, agreed to by them, and was incorporated in the lease." The appellee objected that such statement was incompetent to be received in evidence, it being a part of the stipulation that either party might object to the consideration of any fact stipulated to be true, on the ground that it was irrelevant or incompetent. The court sustained the objection, and this ruling is assigned as for error. We do not think the statement of facts presented reason for departing from the rule that the agreement of the parties should be determined from the writing alone, and upon this ground the ruling of the court should be sustained.

Nor do the facts stated in the stipulation as to what occurred when and the manner in which the modifying clause was added to the lease, place the court in position to construe the language of the lease to mean, as appellant insists, that the appellant was relieved of all liability to make payment of the rent after the assignment of the lease had been made. Though the stipulation sets forth that the appellant was not satisfied with the lease in its original form, and stated that he desired to have a lease so drawn as to give him the privilege of assigning it and also relieving himself of all liability for the payment of the rent in case of such assignment, yet the stipulation does not disclose that the appellee company

was informed of this wish or desire of the appellant, and there is no allegation that it ever consented to accept such a modification of the lease. The allegations of the stipulation in this respect are, that said modifying clause, now appearing as a portion of clause 8 of the lease, "was drawn and submitted to the agents of the appellee company and agreed to by them and incorporated in the lease." Presumably the clause was drawn by the appellant and presented to the appellee's agents as containing the modification that was satisfactory to the appellant. The only meaning to be given to the language of the clause so prepared by the appellant is to so modify the provisions of said clause 3, which denied to the appellant the right of assigning the lease except upon the written consent of the appellee company, as to permit him to assign the same "to any reputable person, persons or corporation" without obtaining the consent of the appellee company. This the appellee company accepted, presumably as it reads.

While it is competent to advise a court, by oral proof, of facts necessary to enable the court to put itself in the place of the parties and read the instrument in the light of the circumstances surrounding them at the time it was made, in order that aid may be given in the ascertainment of the meaning of any doubtful and ambiguous words or terms, still the meaning of the contract and the intention of the parties must be gathered from the words of the writing, and evidence *aliunde* the instrument is not admissible to establish the understanding or intention of the parties. (17 Am. & Eng. Ency. of Law,—2d ed.— pp. 23-25, and cases adjudicated in this court and cited in note 1, p. 24.) The lease contained the express covenant of the appellant to pay the stipulated rent, and the modification of said clause 3 had no effect to relieve him from the performance of his covenant and does not purport to have such effect. The terms and conditions under which Clayton entered into possession of the demised premises

as the assignee of appellant, so far as the appellee had power to prescribe such conditions, appeared in the written consent of the appellee company to the assignment of the lease to Clayton. Clayton at the same time endorsed, in writing, on said lease his acceptance of the assignment of the lease on the terms and conditions incorporated in the written consent of the appellee company to the assignment to him. The court therefore correctly refused to consider the oral testimony of Clayton tending to contradict and vary the terms and conditions of the assignment of the lease so set forth in writing. The surrender of a written lease may be by parol, (*Williams* v. *Vanderbilt*, 145 Ill. 238,) and need not be proven by express and direct evidence but may be inferred from the acts and conduct of the parties. Whether so proven in this case was a question of fact.

No complaint is made as to the rulings of the court in propositions of law, and we are concluded on the point by the judgment of the Appellate Court.

There remains to be considered the contention of appellant that the obligations of the lease were beyond the scope of the corporate power of the appellee corporation, and for that reason void.

It appeared from a certified copy of the articles of incorporation of appellee company that the object for which the company was organized and given corporate existence "is to erect and operate safety deposit vaults." It was organized in 1891 under the general Incorporation act of this State, and was empowered by section 5 of said act (1 Starr & Cur. Stat. 1896, p. 992,) to "own, possess and enjoy so much real and personal estate as shall be necessary for the transaction of their business," or should be acquired in the way of obtaining satisfaction of any indebtedness or liability, subject, however, to the two provisos to said section 5 relative to the enforced sale of. real estate not actually required for the corporate purposes of the company. The lease upon which the action

190—25

was brought purported to demise and lease to the appellant a certain portion of the basement in the building on the corner of Dearborn and Madison streets, in the city of Chicago, to be occupied for the uses and purposes of a buffet and restaurant. The stipulation contained the following statement of facts relative to such building: "Under their charter, which is referred to, the corporation erected an office building on the south-west corner of Dearborn and Madison streets. It extends ninety-one feet upon Dearborn street and fifty feet upon Madison street. It consists of fourteen stories, with a height of one hundred and fifty feet. It contains the demised premises in the basement, eight stores on the ground floor, and over one hundred suites of offices on the upper floors. The gross rent received from the said building is $100,000 per year. The earnings from the safety deposit vaults do not exceed $100 per year. The only safety deposit vaults erected or operated by the plaintiff consist of a small vault upon the fourth floor of the building, constructed in one end of one of the private offices used by the company for its officers and agents. The inside dimensions of the vault are 5x6 feet, and eight feet high. Within said vault are two wooden boxes 24x20 inches, with a height of twenty-four inches. There are six steel boxes 6x10x20 inches. There are in addition forty-six small steel boxes 3x5x20 inches. These are the only safety deposit vaults ever erected or operated by said company. The entire depth within said vault does not exceed in height four feet, in width three feet, in depth twenty inches. Only twenty of the said boxes have ever been rented."

The superior court refused to hold as correct the following proposition of law, presented by the appellee company, viz.:

"The court holds as a proposition of law in the trial and decision of this case, that the plea of *ultra vires* may be successfully interposed in a collateral proceeding

where the corporation is alleged to have performed an act which it was not, under any circumstances, authorized to perform, but that where the act is one which at most is but a mere abuse or excessive use of a general power conferred upon the corporation by its charter such plea cannot be successfully interposed, because the question of *ultra vires* can in such cases be raised only in a direct proceeding by the State to oust the corporation of its usurped powers."

This proposition presents the correct legal doctrine, as we think. That the appellee company possessed ample power to acquire real property and construct a building thereon for the purpose of transacting therein the legitimate business of the corporation is beyond the range of debate. Nor is the contrary contended, but the insistence is that under the guise of erecting a building for corporate purposes the appellee company purposely constructed a much larger building than its business required, containing many rooms intended to be rented to others for offices and business purposes, among them the basement rooms contracted to be leased to the appellant, and that in so doing it designedly exceeded its corporate powers. The position of appellant therefore is, that the appellee corporation has flagrantly abused its general power to acquire real estate and construct a building thereon. Conceding that position to be correct, we do not think it can be availed of as a defense in an action brought by the corporation to recover rent contracted to be paid for the use of one of the rooms of the building. In *People* v. *Pullman Palace Car Co.* 175 Ill. 125, speaking with reference to the power of a corporation to erect a building for its own purposes, we said (p. 139): "The right of the appellee to construct an office building is indisputable, as so, also, is the right to select the most eligible and desirable site. It would be but a narrow and wholly unjustifiable view of this power to insist that in planning and constructing the building the

corporation should leave out of consideration its probable prospective requirements, and should erect a building containing only as many rooms and offices as its present business might demand. The corporation had the right, as we think, to look to and prepare for the future. It was but true economy to do so, and if it proceeded in good faith, * * * no reason is perceived why it should be deemed bound by law to permit such parts of the building as are not for the present required for the accommodation of its business to remain vacant, but, on the contrary, that it might lawfully obtain such income from the rents of such rooms as might be possible until the growth or increase of its business demanded the additional rooms or offices. A corporation could not be permitted, under mere color and pretense of furnishing accommodations for the transaction of its own affairs, to construct houses or rooms for the purpose of renting the same, and engage in renting such houses or rooms as a business, if such pursuit was, as it here clearly is, beyond and distinct from that it was created to pursue and accomplish."

It was within the general scope of the express powers of the appellee corporation to own and possess a building necessary for its proper corporate purposes. In planning and constructing such a building, as was said in *People* v. *Pullman Palace Car Co. supra,* the corporation should not necessarily be restricted to a building containing the precise number of rooms its then business might require, and no more, but that the future probable growth and volume of its business might be considered and anticipated, and a larger building, and one containing more rooms than the present volume of business required, be erected and the rooms not needed might be rented by the corporation,—provided, of course, such course should be taken in good faith, and not as a mere evasion of the public law and the policy of the State relative to the ownership of real estate by corporations.

In such state of case the question is whether the corporation has abused or excessively and unjustifiably used the power and authority granted it by the State to construct buildings and own real estate necessary for its corporate purposes.

We think it has never been held in this State, or understood to be the law, that the question whether such power has been abused could be raised and availed of in defense in a proceeding wholly collateral to the question of the right and power of the corporation in the premises. The earlier decisions of this court are to the effect that a corporation having general power to own real estate for corporate purposes and to acquire real estate in collecting debts due to it, may be required to answer to the State, and to the State only, for an alleged usurpation of power in the respect of the ownership and enjoyment of landed property. (*Williams* v. *Bank of Illinois,* 1 Gilm. 667; *Baker* v. *Admr. of Backus,* 32 Ill. 79; *People* v. *Trustees of Schools,* 111 id. 171; *Rice* v. *Rock Island Railroad Co.* 21 id. 93.) In later cases, notably *National Home Building and Loan Ass.* v. *Savings Bank,* 181 Ill. 35, and *Best Brewing Co.* v. *Klassen,* 185 id. 37, the defense of *ultra vires* has been allowed to be collaterally maintained in cases where the *ultra vires* act of the corporation was wholly beyond and outside the general scope of its corporate powers, express or implied, and entirely foreign to the objects and purposes of its creation,—something which, under any and all circumstances, was beyond its power, either as expressed in the grant or as possessed by necessary implication. The general doctrine incorporated in the refused proposition as applicable ·when it is asserted a corporation has abused its powers, is illustrated—indeed was applied by this court—in *Chicago General Railway Co.* v. *Chicago City Railway Co.* 186 Ill. 219, where it was held that as the appellee company had power from the State to operate street cars by animal power and from the city of Chicago to operate such cars by that mode of pro-

pulsion in and along State street in said city, and had a track on said street and was operating street cars thereon by cable power, the question whether it had power to propel its cars by cable power could not be raised collaterally, but only in a direct proceeding brought in behalf of the People or of the city for that purpose.

The judgment of the trial court resulted from an erroneous opinion as to the correctness of the rule of law announced in the proposition, and the Appellate Court properly reversed the judgment.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE MAGRUDER, dissenting.