La Salle v. Hamilton National Bank, 204 Ill. App. 518.

## La Salle, a corporation, Appellee, v. Hamilton National Bank, Appellant.

## Gen. No. 21,813.

1. LANDLORD AND TENANT, § 270*—*what does not constitute eviction.* Upon a landlord's re-entry under the provision of a lease allowing him to do so on the tenant's default without terminating the lease and relet on account of the tenant for such rent and upon such terms as the landlord should approve, the latter may make alterations in the leased premises for the purpose of securing a new tenant, and his action in so doing does not amount to an eviction of the old tenant, so as to discharge him from liability under the lease.

2. LANDLORD AND TENANT, § 325*—*when evidence sufficient to show assumption of lease.* The evidence *held* to sustain the finding that plaintiff assumed a certain lease from May 1, 1912, and not from October 1, 1911, when defendant vacated plaintiff's premises leased by defendant from plaintiff, in an action to recover rent under such lease for such period.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. CORPORATIONS, § 51*—*what constitutes prima facie proof of existence.* Under a plea of *nul tiel* corporation, the production of the corporate charter *held* to make a prima facie case of corporate existence.

4. CORPORATIONS, § 33*—*how question of violation of statute as to commencement of business may be raised.* The question whether a corporation *de jure* had violated the provision of the statute that a corporation must proceed to do business within two years after the date of its license can only be raised in a quo warranto proceeding by the State and not in a collateral proceeding.

5. CORPORATIONS, § 21*—*when corporation is de jure corporation.* Where a corporation was duly organized in compliance with all of the provisions of the statute relating to the organization of such corporations, *held* that such corporation became a corporation *de jure* when its articles of incorporation were properly certified by the Secretary of State and recorded in compliance with the statute.

6. SAFE DEPOSIT COMPANIES—*when may maintain business through lessee.* A corporation organized for maintaining, operating and managing a system of safety vaults may lawfully carry on such business through the instrumentality of a lessee.

7. CORPORATIONS, § 33*—*how question of fraud in organization may be raised.* The question whether the organization of a corporation was a fraud upon the State, in that its expressed object was to conduct the business of maintaining a system of safety vaults, while its real purpose was to purchase and maintain an office building, cannot be raised collaterally but only in a quo warranto proceeding.

Appeal from the Municipal Court of Chicago; the Hon. JAMES C. MARTIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1915. Affirmed. Opinion filed March 28, 1917. *Certiorari* denied by Supreme Court (making opinion final).

JONES, ADDINGTON, AMES & SEIBOLD, for appellant; KEENE H. ADDINGTON, ALBERT F. MECKLENBURGER and WALTER HAMILTON, of counsel.

MATZ, FISHER & BOYDEN, for appellee; RUDOLPH MATZ and WILLIAM W. CASE, of counsel.

MR. JUSTICE GOODWIN delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The appellant seeks to reverse a judgment entered in the Municipal Court of Chicago against it for $16,720.46, in an action for rent on an alleged lease. Appellant filed its affidavit of merits in the Municipal Court, setting up:

(1) That appellee is *nul tiel* corporation because it was not legally and duly organized, and capable in law of suing appellant upon the supposed cause of action.

(2) That the alleged corporate existence of appellee constituted a fraud upon the State of Illinois, because it pretends that it is a corporation organized for the purpose of carrying on and conducting a safety deposit vault business, while at the time of its incorporation it did not own or conduct such a business, and never has owned or conducted such a business, and that its only business was holding title in fee simple to the land on which the New York Life Building is located:

(3) That appellee's ownership is illegal, and in violation of the public policy of the State, as declared by statute:

(4) That the pretended lease was in violation of the Statute of Frauds:

(5) That appellee, for a valuable consideration, accepted a surrender of the premises:

(6) That appellee, for a valuable consideration, agreed to accept, and did accept, Finley Barrell & Company as tenants, and did satisfy and discharge said pretended lease, and appellant thereupon vacated the premises September 30, 1911, and surrendered the same to appellee, who took possession of the same:

(7) That after appellant vacated the premises, appellee entered and divided the space in such a manner as to make it untenantable.

By way of set-off, appellant set up the same allegations in regard to appellee's acceptance of Finley

Barrell & Company as tenants, and its subsequent repudiation of the agreement.

The evidence disclosed that appellee was incorporated November 10, 1893, and that its articles of incorporation recited that "the object for which it is formed is for the purpose of maintaining, operating and managing a system of safety vaults and in connection therewith, constructing, maintaining and operating a building for the same and doing and carrying on a general business in connection therewith or growing out of the same so far as authorized and empowered by the said act." A lease was executed by appellee as lessor, and appellant as lessee, of the first floor and part of the basement of the New York Life Building, at the corner of Monroe and La Salle streets, Chicago, for a term of five years, expiring April 30, 1912, at a rental of $1,730.20 a month for the first two years, and $2,208.33 a month for the remainder of the term. In this lease it was provided "that in case the lessee shall vacate said premises during the life of this lease, the lessor may, at its option, without terminating this lease, enter into said premises and relet the same for the account of the lessee for such rent and upon such terms as the lessor shall approve; and if a sufficient sum shall not be thus realized monthly (after paying the expenses of such reletting and of collecting the rent accruing from such reletting) to satisfy the monthly rent above provided to be paid by the lessee, then the lessee will satisfy and pay such deficiency upon demand monthly."

In February, 1910, appellant went into voluntary liquidation, but left the furniture and fixtures of the bank on the premises until September 30, 1911, and left one Charles B. Pike as liquidator, with an office on the premises, until that day. Up to that time, the rent for the premises was fully paid. Early in 1910, Mr. Pike asked Mr. Layman, the agent for the building,

to co-operate with him in finding a tenant, which he agreed to do. Several tenants were suggested, and all rejected, until, in the summer of 1911, Finley Barrell & Company became interested in the property. A lease was apparently negotiated, which in its general terms was satisfactory both to Finley, Barrell & Company and appellee, but a question arose as to whether appellee was to assume the lease of certain space occupied by Finley Barrell & Company in the Monadnock Block from October 1, 1911, or from May 1, 1912. Upon this question there is an absolute and hopeless conflict in the testimony, and we are asked to hold that the judge who tried the case without a jury was in error in failing to find that the appellee agreed to accept Finley Barrell & Company and to assume the burden of its Monadnock lease from October 1, 1911, or November 1, 1911. This we are unable to do unless it appears that the finding of the trial court was manifestly contrary to the weight of the evidence. Upon this point, appellant contends that as appellee's agent presumably knew that Finley Barrell & Company intended to move October 1, 1911, and as its own lease expired May 1, 1912, he must have understood that the appellee was to assume the lease from October 1, 1911, and that appellant could have had no object in entering into any negotiations which would not relieve it of the necessity of paying rent, since its obligation ceased in any event May 1, 1912. Mr. Pike, agent for appellant, himself testifies that Mr. Layman told him, September 19, 1911, that he did not see what benefit the bank was to get in the matter, and that he replied that they were going to get the benefit of the Finley Barrell rent from October 1st, to which Mr. Layman replied: "We are not going to assume the Barrell lease in the Monadnock Block until the first of May, 1912."

The real question is, did the minds of the parties

meet upon this point, and upon a careful examination of the evidence we are unable to say that the court's finding that they did not was manifestly contrary to the weight of the evidence. We are, likewise, unable to sustain counsel's contention that the dividing of the space formerly occupied by appellant amounted to an eviction, and therefore discharged it from liability under the lease. The clause in the lease already quoted authorized the lessor to enter without terminating the lease, and to relet the premises for the account of the lessee for such rent and upon such terms as the lessor should approve. That upon such a re-entry in accordance with the terms of the lease, the lessor may make alterations in the premises for the purpose of securing a new lessee, is sustained by reason and authority. (See *Marshall v. John Grosse Clothing Co.,* 184 Ill. 421.)

It therefore remains for us to consider the questions raised by the appellant as to the legal existence of appellee, and its power to execute the lease in question. Filing a plea of *nul tiel* corporation cast upon the appellee the burden of showing its corporate existence, and this it did by presenting its articles of incorporation, which had been duly issued by the Secretary of State, and showing the execution of this and a number of other leases. It is the contention of appellant, however, that the evidence shows that appellee did not, at any time, actually carry on the business for which it was incorporated, and that, in consequence, after the expiration of two years from the issuing of its charter it ceased utterly to be a corporation. In our opinion, however, the production of its charter made out a prima facie case as to its corporate existence, and if the question of whether it ever entered upon the business for which it was chartered may be inquired into in this proceeding, the burden of establishing that it did not clearly rest upon

appellant, and the evidence in this record fails to establish it. We are, however, of the opinion that the question cannot be raised in this proceeding, since the corporation was duly organized as an Illinois corporation, and all of the provisions of the statute relative to the organization of such a corporation were fully complied with. It necessarily follows that when the articles of incorporation were properly certified by the Secretary of State, and recorded in compliance with the statute, appellee became a corporation *de jure*. We do not think that there is any ground for holding that in a collateral proceeding a question may be raised as to whether such a corporation has violated the provision that it must "proceed to business" within two years after the date of its license, although it would appear that such an inquiry could be pursued by the State in quo warranto proceedings. But there appears to be a further answer to the contention which has not been suggested by counsel for appellee. The object for which the corporation is formed is recited to be "for the purpose of maintaining, operating and managing a system of safety vaults," etc. It cannot be contended that the corporation has not continuously maintained a system of safety vaults, and, to that extent at least, carried on the business for which it was incorporated. Appellee further contends that as the business of maintaining, operating and managing a system of safety vaults was the purpose for which it was incorporated, it had, under the laws of the State of Illinois, the right to lease its vaults to another, and thus carry out its purposes through the instrumentality of the lessee, and, in support of this contention, cite *People v. Walker Opera House Co.*, 249 Ill. 106. In that case, the object of the incorporation was to purchase or erect and operate a building or buildings for military and other purposes. The replication stated that the defendant had been engaged in the

sole business of leasing the building purchased and improved by it, and collecting the rents without authority. The court, in holding the replication bad, said, page 111:

"The charge in the seventh replication was, in substance, that defendant had leased the entire building to another person for opera house or theatrical purposes, and that, even if it had the right to carry on an opera house under its charter, it must do so directly and not through a lessee. If the charter granted defendant in error the right to carry on an opera house, we think it was complying therewith by carrying it on through a lessee."

That case was notably stronger than the case at bar, since it was a proceeding in the nature of quo warranto brought by the Attorney General in the name of the People of the State. Appellant's contention that the organization of appellee was really for the purpose of purchasing and maintaining an office building, and was therefore a fraud upon the State of Illinois, suggests a question which is one properly arising between appellee and the State of Illinois, and which, under numerous authorities, cannot be raised collaterally. If appellee's incorporation did constitute a fraud upon the State, that question may be raised by the State in quo warranto proceedings, but not otherwise. In this aspect of the case, it is in all respects similar to the case of *Rector v. Hartford Deposit Co.*, 190 Ill. 380, where, in answer to a suit upon a lease, it was contended that the lease was beyond the scope of the corporate power of the appellee corporation, and for that reason void. The appellee was incorporated "to erect and operate safety deposit vaults." It appeared that under this charter it had erected an office building on the southwest corner of Dearborn and Madison streets, Chicago, extending ninety-one feet on Dearborn street and fifty feet on Madison street, consisting of four-

teen stories, of a height of one hundred and fifty feet, and producing a gross rental of over $100,000 a year. The only safety deposit vaults were fifty-four boxes in the private office of the company, which produced a rental not exceeding $100 a year. The court held that the question of the authority of the corporation to erect the building and rent the offices, was one which could only be raised in a direct proceeding by the State, and even if the corporation had flagrantly abused its general power to acquire real estate and construct a building, it could not be availed of as a defense in an action brought by the corporation to recover rent contracted to be paid for the use of one of the rooms of the building.

We are, therefore, of the opinion that appellee is a *de jure* corporation existing under the laws of the State of Illinois, and that, in view of the decisions of our Supreme Court, the contention that appellee's organization constituted a fraud and imposition upon the State of Illinois, and was a flagrant abuse of its charter powers, cannot be set up as a defense in this action. The judgment of the Municipal Court must, therefore, be affirmed.

*Affirmed.*