State-Washington Stores Company, Appellee, v. Walgreen Company, Appellant.

Gen. No. 36,594.

Opinion filed November 21, 1933.

MARKHEIM & ALLIE, for appellant; HARRY MARK-
HEIM and A. R. MILLER, of counsel.

TAYLOR, MILLER, BUSCH & BOYDEN, for appellee;
TAYLOR, MILLER, BUSCH & BOYDEN, PRESTON BOYDEN,
JAMES J. MAGNER, CASSIUS M. DOTY, WILLIAM KLEVS,
WINSTON, STRAWN & SHAW and JOHN D. BLACK, of
counsel.

MR. PRESIDING JUSTICE SULLIVAN delivered the opin-
ion of the court.

Defendant, Walgreen Co., seeks by this appeal to
vacate a judgment for $18,750 rendered against it in
favor of plaintiff, State-Washington Stores Co., in a
distress for rent proceeding in the municipal court of
Chicago. The case was tried before the court without
a jury.

Plaintiff's claim is for rent for the months of May,
June and July, 1932, at the rate of $6,250 a month for
space in the premises at the southwest corner of State
and Washington streets, Chicago, under the terms of·
a lease executed May 1, 1928, by Warmington, Inc.,
landlord, and Walgreen Co., tenant; that the rever-
sionary interest and all right, title and interest in this
lease was transferred and assigned to it by Warming-
ton, Inc., under an agreement entered into November
18, 1929; that defendant continued to pay plaintiff the
rent provided in the lease from January, 1930, until
May, 1932, when it refused to pay the rent due under
the lease, and that it still persists in its refusal.

The allegations of defendant's affidavit of merits
pertinent to this appeal are that the act of plaintiff in
accepting the assignment of the leasehold estate was
ultra vires and null and void, that plaintiff therefore
has no right or power to maintain this action, and that
the sole object of the incorporation of plaintiff was
"to own, operate and conduct a department store or

stores for the purchase and sale at retail and wholesale (of) dry goods, shoes, clothing and all other articles of merchandise commonly sold in department stores.''

The affidavit of merits further alleged that the building known as the Reliance Building, part of the main floor of which was leased to defendant, consists of a 14-story and basement building; that the ground floor is divided into two store rooms, one of which with part of the basement space is covered by the lease to defendant for a term commencing May 14, 1928, and ending May 13, 1948; that the remaining store on the main floor and the balance of the basement space, with the entire second, third and fourth floors of the building were leased June 25, 1928, to the Miller-Wohl Co., Inc., a New York corporation, for a period of 20 years, and that the Miller-Wohl Co. has been occupying said premises and conducting therein the business of selling ladies' garments and other merchandise; that the remaining 10 floors of the building were divided into various rooms for offices and have been rented to various tenants for various purposes; that such of the offices as have not been rented by plaintiff are held by it for the purpose of renting or leasing; that plaintiff has never occupied any part of the building for any purpose whatsoever, except that it has maintained an office in the building; that plaintiff never owned or occupied any real estate other than this building and has never engaged in any business for which it was incorporated either in this building or elsewhere; that the only business plaintiff has ever carried on is that of holding this leasehold estate as an investment and receiving rentals from tenants; that plaintiff acquired this leasehold estate and the building thereon, not for any purpose set forth in its statement of incorporation, but as an investment and for the purpose of leasing to tenants; that it was impossible for plain-

tiff to carry on the business of conducting a department store in this building because such parts of the building as could be so used were at the time of the incorporation of plaintiff under long term leases to tenants, including defendant, and that plaintiff did not intend at the time of its purported incorporation, and has not at any time subsequent thereto, intended to own, operate and conduct a department store for the purchase and sale of dry goods, shoes, clothing and all other articles of merchandise commonly sold in department stores, or to conduct any of such activities in this building or any other building; and that plaintiff has never since its purported incorporation made any use of the powers granted to it in its articles of incorporation and has never intended to make any such use thereof.

Other questions were raised in the trial court but defendant's sole contention here is that the acquisition by plaintiff of the leasehold from Warmington, Inc., was for investment purposes only, and not for the conduct of a department store, and was therefore ultra vires and void, so that it could not bring an action for rent based on the lease to defendant.

Plaintiff's theory is that it is a mercantile corporation organized for lawful purposes with statutory powers to acquire real estate and that its acquisition of the property of its predecessor, Warmington, Inc., including the reversionary estate in the premises demised, was not ultra vires of its corporate object, because plaintiff was merely a reorganization of Warmington, Inc., which admittedly was acting intra vires in leasing the premises to defendant; that it was exercising its corporate franchise by having lessees conduct department stores on the premises; that the defense of ultra vires cannot prevail inasmuch as it was incorporated for a lawful purpose, and the object and purpose of a corporation must be determined solely

from its charter; that alleged secret purposes of incorporators cannot be urged as rendering a corporation unlawful when the object and purpose set forth in its charter are lawful, and that defendant cannot collaterally attack the validity of the leasehold acquired by plaintiff by assignment from Warmington, Inc., so long as plaintiff was incorporated for a lawful purpose.

The facts admitted or undisputed on the record are that the lease sued on was made May 1, 1928, between Warmington, Inc., plaintiff's assignor, or lessor, and defendant, as lessee, for a term of 20 years, commencing May 14, 1928, and the rent reserved was $1,500,-000, payable in equal monthly instalments of $6,250, and an additional percentage rental based upon the amount of defendant's sales; that defendant was in undisturbed possession of the premises specified in the lease during May, June and July, 1932, and was still in possession at the time of the trial; that although payment was demanded no rent for these months was paid; that plaintiff's claim is as assignee of the reversionary estate under the lease from Warmington, Inc., to defendant, pursuant to a written assignment dated November 18, 1929, from Warmington, Inc., to it; that subsequent to the date of this assignment defendant paid the monthly rentals provided in the lease, up to and including April, 1932; that reports as to the amount of business done upon the premises were also made by defendant to plaintiff, pursuant to the terms of the lease, and that at the time of the execution of the lease between Warmington, Inc., and defendant, Warmington, Inc., had full power and authority under its charter to make the lease to defendant.

It appeared that Warmington, Inc., was incorporated January 18, 1927, for the purpose of operating a department store or stores; that it acquired the leasehold estate January 23, 1927, and immediately

took possession of the premises; that it proceeded to remodel the first seven floors and basement at a cost of more than $500,000 to render them suitable for the operation of a department store, expending an additional sum in excess of $75,000 for the installation of furniture and fixtures adapted to department store purposes; that Warmington, Inc. operated a department store in the first seven floors and basement of the premises until the spring or summer of 1928, when insurmountable financial difficulties compelled it to liquidate; that it disposed of its merchandise and May 1, 1928, leased part of the ground floor and basement to defendant whose business was the sale of drugs, the usual accessories of drug stores and sundry merchandise; that a lease was executed between Warmington, Inc. and Miller-Wohl Co. for a term of 20 year commencing July 15, 1928, covering the balance of the basement and ground floor and all of the mezzanine, second, third and fourth floors, including the fixtures theretofore installed, for the operation and conduct of a department store; that at the time of the assignment of the leasehold by Warmington, Inc. to plaintiff, George W. Swigart and Charles J. Canfield owned all of the stock of Warmington, Inc., except one qualifying share held by Orville J. Taylor; that the corporation was obligated to the First National Bank to the extent of $400,000, and was indebted to Swigart and Canfield in excess of $500,000 for money advanced to it for the purpose of remodeling the premises and carrying on its business prior to its liquidation; that the incorporation of plaintiff was in the nature of a reorganization of Warmington, Inc. and it took over not only the leasehold but the furniture and fixtures of Warmington, Inc.; that all of the capital stock of plaintiff, except three qualifying shares issued one each to Swigart, Canfield and Taylor, were issued to

Warmington, Inc., in consideration of its assignment of its interest in the leasehold and fixtures to plaintiff; that Warmington, Inc. in turn transferred all of the stock in plaintiff corporation received by it to Swigart and Canfield, in consideration of its indebtedness to them and their assumption as individuals of its indebtedness of $400,000 to the First National Bank, and that at the time of the commencement of this action Swigart and Canfield were the sole owners, with the exception of one qualifying share held by Taylor, of all of the stock of plaintiff and were with Taylor its officers and directors, as they were at the time of the assignment of the leasehold by Warmington, Inc. to plaintiff the sole owners of its stock and its officers and directors.

The record discloses that plaintiff is virtually a reorganization and continuance of its predecessor, Warmington, Inc., under a new name with a rearranged corporate stock structure. Its objects and purposes, the owners of its stock, its managers and agents, its properties and assets are the same as those of its predecessor. It is undisputed that a substantial portion of the building was at the time of and ever since the creation of plaintiff corporation and still is being used for mercantile purposes both by defendant and Miller-Wohl Co., and that the building is suitable for department store purposes. The latter company used and still uses fixtures belonging to plaintiff which were used by Warmington, Inc. in the conduct of its department store. In addition to the minimum rental of $6,250 monthly, defendant's lease provided for payment to lessor of an additional percentage of its annual sales over $750,000.

In *People v. Walker Opera House Co.*, 249 Ill. 106; *LaSalle v. Hamilton Nat. Bank*, 204 Ill. App. 518 (certiorari denied by the Supreme court); *Starke v. Guf-*

*fey Petroleum Co.*, 98 Tex. 542; *Bartholomew v. Derby Rubber Co.*, 69 Conn. 521; *Coal Creek Min. & Mfg. Co. v. Tennessee Coal, Iron & R. Co.*, 106 Tenn. 651, 62 S. W. 162, and *Featherstonbaugh v. Lee Moor Porcelain Clay Co.*, L. R. 1 Eq. Cas. 318, it was held that compliance with the objects of the charter of a corporation, through lessees, was lawful compliance with the objects for which the companies were incorporated.

However, we deem it unnecessary to decide whether the facts in this case bring it within the law as held in these decisions. The operation of the Miller-Wohl Co. department store, defendant's and other merchandising businesses, demonstrates conclusively that the building was used for the objects and purposes designated in plaintiff's charter. This being true, it follows in logical sequence, that the only possible front on which plaintiff might be vulnerable to attack is as to whether or not in the method and manner of the operation of its corporate business it abused or unlawfully exceeded its charter powers, and such attack can be made only by the State in a direct proceeding. Defendant, in its endeavor to be relieved of its obligation to pay rent under its lease, is clearly precluded from collaterally asserting any claimed abuse or unlawful excess of plaintiff's charter powers as a defense against plaintiff's claim. The statement of plaintiff's purposes as set forth in its article of incorporation is as follows:

"The object for which it is formed is: to own, operate and conduct a department store or stores for the purchase and sale at retail and wholesale, dry goods, shoes, clothing and all other articles of merchandise commonly sold in department stores."

Corporations created under the General Corporation Act of this State are empowered under our law to acquire, own, possess and enjoy so much real and personal property as may be necessary for the trans-

action of the business of such corporations, and to lease, mortgage, pledge, sell, convey or transfer same. The purposes and objects of plaintiff's incorporation are obviously lawful, as is also its right to acquire and hold real estate as a power incidental to its business purposes.

From the written opinion filed by the trial judge in this cause we adopt and quote the following finding, which we deem particularly apt and pertinent:

"Defendant's claim that the plaintiff at the time of its incorporation had no intention of conducting, and that it was not its purpose to conduct, the business specified in its charter amounts to a collateral attack upon the lawful creation and existence of said corporation and its consequent powers to acquire, hold and lease the premises in question, and if tenable is one of the few exceptions to the general rule that prevails in this state, as well as in all other states, that only the state can question the legality of the incorporation of a corporate body. We understand the true rule of exception to be applicable only where the express charter object falls outside the scope of the enabling act, nor is the defense of *ultra vires* available except in cases where the acts complained of are wholly outside the general scope of a company's corporate powers, expressed or implied, and entirely foreign to the objects and purposes of its creation; something which under any and all circumstances was beyond its powers, either as expressed in the grant or as possessed by necessary implication."

*Carroll v. City of East St. Louis,* 67 Ill. 568, and *Imperial Bldg. Co. v. Chicago Open Board of Trade,* 238 Ill. 100, cited by defendant as supporting its contention that the acquisition of the leasehold by plaintiff was and is ultra vires, are cases within the exception that their express charter object or objects fall

outside the scope of the enabling act, and have no application to this proceeding.

In the *Carroll* case, a foreign corporation organized for the charter purpose of dealing in land attempted to acquire title to certain lands in this State. At that time it was legally impossible for a corporation to be created in Illinois whose sole object was dealing in land, and the court held that a foreign corporation could not be licensed or permitted to exercise a charter purpose in this State which was beyond the purview of any enabling act of our legislature then in force.

In the *Imperial Building Co.* case, *supra,* an attempt was made to incorporate, with the object of acquiring real estate for the purpose of erecting a building thereon, to make leases and collect rents for the use of the building. At that time no corporation could be formed under the law of Illinois for that purpose, and the court consistently held that a certificate of incorporation for such purpose did not result in the creation of a corporation, and that a lessee could successfully defend on that ground in a collateral proceeding against a claim on the lease.

*The National Home Bldg. & Loan Ass'n v. Home Savings Bank,* 181 Ill. 35; *North Ave. Bldg. & Loan Ass'n v. Huber,* 270 Ill. 75; *Calumet & Chicago Canal & Dock Co. v. Conkling,* 273 Ill. 318; and *Mercantile Trust Co. v. Kaster,* 273 Ill. 332, cited by counsel for defendant in support of its contention that the acquisition of a leasehold by a lawfully created corporation is subject to collateral attack on the ground of its being ultra vires, were all cases that came squarely within the rule that the defense of ultra vires was available only in cases where the act complained of was wholly outside the general scope of the company's corporate powers, expressed or implied, and entirely foreign to the purposes and objects of its creation; something

which under any and all circumstances was beyond its powers either as expressed in the grant or as possessed by necessary implication. These cases are readily distinguishable from this proceeding where the charter purposes are conceded to be lawful, and where no act is complained of that is wholly outside the general scope of plaintiff's corporate powers, and entirely foreign to the purposes and objects of its creation.

In the *National Home Bldg. & Loan Ass'n* case, *supra,* the building association was empowered under its charter to lend money to its members only and in a trade of lots assumed an incumbrance payable to a nonmember for a lot conveyed to it. Subsequently, recognizing the transaction as beyond its charter power to lend money to members only, it unconditionally conveyed the property back to its grantor. Later the mortgagee attempted to enforce a deficiency judgment against the association, and the court held that the transaction being entirely beyond the charter purposes for which the corporation was created, its lack of power to make the contract was a good defense. In that case the act of the corporation was wholly outside the general scope of the association's corporate powers and entirely foreign to the purposes for which it was created.

*North Avenue Bldg. & Loan Ass'n v. Huber, supra,* involved a foreclosure proceeding by a building and loan association. Defendant Huber executed notes and a trust deed to secure the notes to one Kemper for a loan made by him to Huber. Kemper sold the notes and trust deed to the building and loan association of which he was a member. Upon default in the payment of the notes the association and Kemper brought foreclosure proceedings against Huber, and the court sustained his defense that the association, by making a loan to a nonmember and taking a mortgage as secu-

rity therefor, was pursuing a purpose entirely outside the general scope of its powers and foreign to the purposes °of its creation.

In *Calumet & Chicago Canal & Dock Co. v. Conkling, supra,* Conkling applied to the dock company for a loan of $30,000, which was refused on the ground that the company was not empowered under its charter to make the loan. Conkling then proposed to purchase a lot belonging to the dock company for $15,000 on credit, providing the company would at the same time lend him $35,000, taking back his notes for $50,000 and a mortgage on the land so purchased by him, and on an adjacent lot already owned by him. The proposal was accepted and the loan made. Upon default in the payment of the notes the company attempted to enforce the loan contract through foreclosure proceedings. It was held that it could not because the making of the loan was wholly beyond the general scope of its powers as declared in its charter.

The *Mercantile Trust Company* case, *supra,* involved an action upon a guarantee contract. The corporation had the power to buy and sell commercial paper but was not empowered to make loans, and the court held that the agreement in question was in effect not a contract for the purchase of accounts but a loan with a pledge of the accounts as security. The court refused to enforce the contract because the making of loans and taking guarantees of loans was entirely foreign to the charter objects of the corporation.

*McIlvaine v. Foreman,* 292 Ill. 224, is cited by defendant as conclusive of its contention that the acquisition of the leasehold estate by plaintiff was for investment purposes only and therefore ultra vires its objects as designated in its charter and clearly subject to collateral attack. In the *McIlvaine* case, the Dakota Building Co., a corporation, in 1888 ac-

quired a leasehold estate for 99 years in certain property in the central business district of Chicago, and in October, 1917, conveyed to certain individuals each an undivided half interest in the leasehold theretofore acquired by it. The leasor, owner of the fee in the property, died in 1908, and in December, 1917, the trustees of her estate served notice on the assignees of the leasehold that they had renounced the lease, which had been executed between deceased lessor and the Dakota Building Co., on the ground that the company was not a legally organized corporation and had no power or right to receive the purported lease or take possession of the property. Thereupon one of the assignees of the leasehold from the Dakota Building Co. filed a bill for partition making the other assignee and the trustees of the estate defendants. The trustees filed an answer asserting that the purported lease was invalid and null and void, and by their cross-bill asked that the lease be declared to be a cloud upon their title and that it be set aside and declared null and void. When the Dakota Building Co. was organized its charter declared that ''the object for which it is formed is the erection of buildings and construction and leasing of safety deposit vaults and the acquiring of leasehold estates in real estate situated in said county of Cook and the erection and improvement of buildings thereon.'' In its decision in the *McIlvaine* case the Supreme Court used the following language (pp. 228 and 229):

''Whether the purpose of a corporation is within the scope of the statute under which the corporation is sought to be organized is to be determined solely from its charter. We have heretofore held that the general Incorporation act does not authorize the organization of a corporation for the purpose of 'acquiring . . . leasehold estates in real estate . . . and

the erection and improvement of buildings thereon.' (*Imperial Building Co. v. Board of Trade*, 238 Ill. 100.) But the fact that the articles of association contain unauthorized provisions in addition to those which are authorized does not render the organization of the corporation void, for they may be rejected as surplusage. (*People v. Chicago Gas Trust Co.*, 130 Ill. 268.) It is lawful for a corporation to be organized in this State for the purpose of engaging in the business of operating safety deposit vaults. (*Rector v. Hartford Deposit Co.*, 190 Ill. 380.) But it is contended by appellants that the 'construction and leasing of safety deposit vaults' is not operating them, and that it is no more lawful to organize a corporation for the purpose of constructing and leasing safety deposit vaults than it would be to organize a corporation for the purpose of constructing and leasing factories, mills or hotels. We do not consider it necessary to determine this question because it is conceded that the incorporators of the Dakota Building Company had no intention of engaging in the business of operating safety deposit vaults. We think it clear from the stipulation of facts filed in this cause that the only purpose of the organization of this corporation was the acquiring and holding of this piece of real estate as an investment, and it is equally clear that this object and purpose are against our statute and against the declared public policy of this State. (*Carroll v. City of East St. Louis*, 67 Ill. 568; *Imperial Building Co. v. Board of Trade, supra; People v. Shedd*, 241 Ill. 155.) The question here presented is not whether the power given this corporation by its charter has been abused, but the question is whether the corporation had any lawful authority, under its charter, to accept and hold the leasehold interest in this property. Where a corporation has the general power to possess

real estate and a building necessary for its proper corporate purpose, the State, only, may raise the question of abuse of such power (*Rector v. Hartford Deposit Co., supra*), but where the act done by the corporation is beyond its legal powers the act is wholly void and of no legal effect and the legality of the act may be raised by any party affected by it.'' (Citing cases.) We cannot agree with the deductions drawn by defendant's counsel from either the reasoning or conclusions of the Supreme Court in this decision. We are firmly of the opinion that this decision is in complete accord with its previous decisions and distinctly supports plaintiff's theory in the instant case.

At the outset the decision reiterates the rule that whether the purpose of the corporation is within the scope of the statute, under which the corporation is sought to be organized, is to be determined solely from its charter. The court found that the only language used in the charter of the Dakota Building Co. specifying its corporate purposes that could possibly bring it within the scope of the statute were the words ''constructing and leasing of safety deposit vaults,'' and stated that it was lawful for a corporation to be organized for the purpose of engaging in the business of operating safety deposit vaults, but was relieved of the necessity of determining whether ''constructing and leasing of safety deposit vaults'' could be construed as operating safety deposit vaults, because it was conceded under the stipulation of facts in that case that the incorporators of the Dakota Building Co. never had any intention of operating safety deposit vaults. By reason of the stipulation of facts the court could find no lawful purpose in the corporation's charter solely from which it had to determine whether the object of the corporation was within the scope of the statute under which the corporation was sought to be

organized. It was of necessity compelled to find that the only purpose of the incorporation was the acquisition and holding of the real estate simply for an investment. In its final analysis the situation as to the Dakota Building Co. was comparable to the situation disclosed in the *Carroll v. City of East St. Louis* and the *Imperial Building Co. v. Board of Trade* cases, *supra,* where the express charter purposes of the corporation fall outside the scope of the enabling act. The distinction between the *McIlvaine* case and the instant case is clear and obvious. The Supreme Court, upholding the plaintiff's contention, repeats the recognized rule *"where a corporation has the general power to possess real estate and a building necessary for its proper corporate purposes, the State, only, may raise the question of abuse of such power. . . ."*

It is unquestioned in this cause that the objects and purposes of plaintiff, as set forth in its articles of incorporation, were entirely lawful and wholly within the scope of the statute which authorized its incorporation, and it cannot be doubted that it was empowered under the statute to acquire and hold such real estate as was necessary to the conduct of its business. Therefore, under the reasoning and conclusion of the Supreme Court in the *McIlvaine* case, the defense of ultra vires cannot avail here.

It is a fundamental principle of corporate jurisprudence that, although it may be ultra vires for a corporation to acquire title to land so that in the executory stage of the transaction a grantor could refuse to complete the transfer of title, or where the transaction is executed the State could compel the corporation to dispose of the property improperly acquired, once the transaction is completed a valid title vests in the corporation and it is not subject to attack by third

persons, provided the corporation has the power to acquire land for some purposes.

This doctrine was enunciated by the Supreme Court of this State in the case of *Hough v. Cook County Land Co.*, 73 Ill. 23, and has been adhered to without deviation. In the *Hough* case the court said, p. 27:

"There seems to us, however, to be this important distinction between the principle recognized in these authorities (referring, among others, to *Carroll v. City of East St. Louis, supra*) and that applicable here. There, by reason of the express or implied prohibition of the law, the party is absolutely denied the power to acquire any rights through the particular contract. Here, there is power to purchase, receive conveyances and hold title to lands, but it is prohibited that they shall be purchased and held for other than a prescribed purpose. In the one case, the principle affects the power of acquisition; in the other, it affects simply the use to which the acquisition shall be applied. . . .

"But appellee being authorized to purchase and hold lands, and appellant having sufficient capacity to convey, the title was obviously vested in appellee by the delivery of the deed, and the question whether appellee has, by its purchase and use of lands, exceeded the powers conferred by its charter, is one between the State and appellee, with which appellant, as a grantor simply, has no concern. *Banks v. Poiteaux*, 3 Randolph, 141; *Barrow v. N. & C. T. Co.*, 9 Humphreys, 304; *Chambers v. St. Louis*, 29 Mo. 576; *Attorney General v. Tudor Ice Co.*, 104 Mass. 239; *Whitman Mining Co. v. Baker*, 3 Nevada, 391; *Hayward v. Davidson*, 41 Ind. 212; Angell & Ames on Corp. secs. 152–3; Dillon on Munic. Corps. sec. 444; *Natoma W. and M. Co. v. Clarkin*, 14 Cal. 544.

"It is well observed by Field, J., in the case last above referred to, at p. 552: 'It would lead to infinite

embarrassment if, in suits by corporations to recover the possession of their property, inquiries were permitted as to the necessity of such property for the purposes of their incorporation, and the title made to rest upon the existence of that necessity.' "

The rule was reaffirmed in the case of *Alexander v. Tolleston Club*, 110 Ill. 65, 72, where the court held:

"Even if appellee has exceeded in extent its power of holding real estate, appellant, we conceive, cannot take advantage of the fact. In *Hayward v. Davidson*, 41 Ind. 214, the rule is acknowledged to be, in such cases where a corporation is authorized by its charter or the law of its creation, in some cases, to take and hold the title to real estate, that 'as the corporation may, for some purposes, acquire and hold the title to real estate, it cannot be made a question by any party, except the State, whether the real estate has been acquired for the authorized uses or not,' and quotes the language of Judge Dillon upon the subject, in his work on Municipal Corporations, sec. 444: 'If there is capacity to purchase, the deed to the corporation divests the estate of the grantor, and there is a completed sale; and whether the corporation in purchasing exceeds its power is a question between it and the State, and does not concern the vendor.' . . .

"The inequitable character of the claim which is here set up to defeat this lease because of the alleged incapacity of appellee to take it, is, under the facts of this case, apparent. This objection, that the power to acquire and hold lands is not conferred by the statute of 1872, is not well taken. And we think the same must be said with respect to such power not being conferred by the laws of the State of Indiana, and as to its supposed policy. Whatever such may be, would seem, under the authorities above cited, to be a matter which appellant cannot avail himself of in this

suit,—that that is not a thing of individual concern, but that it. is to be left with that State alone to assert for herself any laws or policy of her own upon the subject, as she may, or not, see fit to do.''

In passing upon the same proposition the following language was used by the Supreme Court in *Cooney v. Booth Packing Co.,* 169 Ill. 370, 372, 373:

''It is next contended that appellee, being an Illinois corporation, cannot own real estate except where it is taken for a debt due it or is necessary for the transaction of its business, and there being no evidence in the record that the real estate in question was so taken for a debt or was necessary for the transaction of the business of the corporation, equity will not lend its aid in establishing title in appellee. This point cannot be sustained. In *Barnes v. Suddard,* 117 Ill. 237, we held that if a corporation has power to take and hold real estate for any purpose, when the deed to it is executed the title passes to it, and whether the corporation exceeded its powers in accepting the conveyance was a question which could only be raised by the State.''

In *Hayden v. Hayden,* 241 Ill. 183, 185, 186, the court said:

''It is suggested in appellee's brief that the Hayden Manufacturing Company had no corporate power to take and hold the title to the property. It is said that that corporation was organized to carry on a manufacturing business, and that the property was never occupied or used by it in its business but was a residence, which it could not legally own. The corporation had the power to acquire real estate for the purposes of its business, and if in taking the conveyance it exceeded its powers the State alone can interfere.''

The Supreme Court reasserted the principle in *Golconda Northern Ry. v. Gulf Lines Connecting R. R.,* 265 Ill. 194, 204, 205, where this language was used:

"Where a corporation has power to hold real estate under any circumstances or for any purpose, its title cannot be questioned by any person except the State." (Citing cases.)

As late as December, 1932, in the case of *Wolff v. Schwill & Co.*, 351 Ill. 28, the following pronouncement was made by the Supreme Court:

"The plaintiff in error cannot well question the right of the defendant in error to hold land for certain purposes in view of its express charter powers in that regard. Whether the defendant is now holding the land in question within the scope of its charter powers or in abuse thereof is a question which the State of Illinois alone can raise. *Bartee Tie Co. v. Jackson,* 281 Ill. 452; *Hayden v. Hayden,* 241 id. 183; *Springer v. Chicago Real Estate Loan Co.,* 202 id. 17."

A leading case in point and one frequently cited in this and other jurisdictions as to the disposition of property lawfully acquired by a corporation is *Rector v. Hartford Deposit Co.,* 190 Ill. 380, where in its opinion the court said (pp. 386, 387):

"The superior court refused to hold as correct the following proposition of law, presented by the appellee company, viz.:

" 'The court holds as a proposition of law in the trial and decision of this case, that the plea of *ultra vires* may be successfully interposed in a collateral proceeding where the corporation is alleged to have performed an act which it was not, under any circumstances, authorized to perform, but that where the act is one which at most is but a mere abuse or excessive use of a general power conferred upon the corporation by its charter such plea cannot be successfully interposed, because the question of *ultra vires* can in such cases be raised only in a direct proceeding

by the State to oust the corporation of its usurped powers.'

"This proposition presents the correct legal doctrine, as we think. That the appellee company possessed ample power to acquire real property and construct a building thereon for the purpose of transacting therein the legitimate business of the corporation is beyond the range of debate. Nor is the contrary contended, but the insistence is that under the guise of erecting a building for corporate purposes the appellee company purposely constructed a much larger building than its business required, containing many rooms intended to be rented to others for offices and business purposes, among them the basement rooms contracted to be leased to the appellant, and that in so doing it designedly exceeded its corporate powers. The position of appellant therefore is, that the appellee corporation has flagrantly abused its general power to acquire real estate and construct a building thereon. Conceding that position to be correct, we do not think it can be availed of as a defense in an action brought by the corporation to recover rent contracted to be paid for the use of one of the rooms of the building."

These cases conclusively establish the proposition that, if a corporation has the power to acquire real estate for any purpose, and it acquires property in excess or in abuse of its powers and objects, its action in excess or abuse of its powers cannot be attacked or questioned by anyone except the State.

We are constrained to hold that there is no merit in defendant's contention that the acquisition of the leasehold in question was *ultra vires* of plaintiff's charter, and that even though its acquisition of the leasehold was *ultra vires* of its objects and purposes, defendant cannot attack it in a collateral proceeding

for the purpose of relieving itself of its obligation under its lease to pay rent for the premises occupied and enjoyed by it.

For the reasons indicated herein the judgment of the municipal court is affirmed.

*Affirmed.*

GRIDLEY and SCANLAN, JJ., concur.